UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

EZRA BAPTIST, JULIET PEARCE, MARGARET LEWIS, JAMIE SANIN, CAROLYN LECHUSZA AQUALLO, and CHELSEA VILLALBA, on their own and on behalf of a class of similarly situated individuals who suffered excessive force during their unlawful arrests, and MICHELLE RIDDELL, on her own and on behalf of a class of similarly situated individuals unlawfully arrested,

                              Plaintiffs,

    vs.

DARRELL P. WHEELER in his individual capacity, SHERIFF JUAN FIGUEROA, in his individual capacity, OLIVIA BCHOR and THOMAS BRUSCA, as representatives of a defendant class of New York State Police Officers who violated plaintiffs' rights as set forth herein and who are sued in their individual capacities, DEPUTY SHERIFF HARDER, as a representative of a defendant class of members of the Ulster County Sheriff's Office who violated plaintiffs' rights as set forth herein and who are sued in their individual capacities, PO J. YUKOWEIC, Shield No. 16, as a representative of the class of members of the New Paltz State University Police who violated plaintiffs' rights as set forth herein and are sued in their individual capacities,

                              Defendants.
------------------------------------------------------------------x

Docket No. 24 Civ. 1478
       (AMN)(TWD)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

SOKOLOFF STERN, LLP
*Attorneys for Defendants*
*Sheriff Juan Figueroa and Sgt. James Harcher*
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 240544

Mark A. Radi
  Of Counsel

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 1

STANDARD OF REVIEW ........................................................................................................... 3

ARGUMENT .............................................................................................................................. 4

    POINT I    Plaintiffs Failed to Allege Personal Involvement of Sheriff Figueroa and Sgt. Harcher............................................................................................................... 4

        A    Plaintiffs Failed to State Plausible First Amendment Claims Against Sheriff Figueroa and Sgt. Harcher ........................................................................ 5

        B    Plaintiffs Failed to State Plausible Excessive Force Claims Against Sheriff Figueroa and Sgt. Harcher ........................................................................ 7

        C.    Plaintiffs Failed to State Plausible False Arrest/Unlawful Seizure Claims Against Sheriff Figueroa and Sgt. Harcher ......................................................... 10

    POINT II    Sheriff Figueroa and Sgt. Harcher are Entitled to Qualified Immunity because Plaintiffs Failed to Allege Their Personal Involvement in the Violation of Any Clearly Established Right ................................................................................... 12

CONCLUSION ......................................................................................................................... 14

# TABLE OF AUTHORITIES

Cases                                                                                                       Pages

*Acevedo v. Ross,*
    2019 WL 343246 (E.D.N.Y. Jan. 28, 2019) ................................................................. 9

*Anderson v. Creighton,*
    483 U.S. 635 (1987) ................................................................................................. 12

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) ................................................................................................. 12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................................... 3

*Atuahene v. City of Hartford,*
    10 F. App'x 33 (2d Cir. 2001) ................................................................................... 5

*Automated Transaction LLC v. N.Y. Cmty. Bank,*
    2013 WL 992423 (E.D.N.Y. Mar. 13, 2013) ............................................................. 5

*Back v. Hastings On Hudson Union Free Sch. Dist.,*
    365 F.3d 107 (2d Cir. 2004) ..................................................................................... 4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................... 3

*Burdick v. Oswego Cnty.,*
    2014 WL 12781320 (N.D.N.Y. Mar. 31, 2014) ........................................................ 7

*Byrd v. Town of DeWitt,*
    698 F. Supp. 3d 379 (N.D.N.Y. 2023) .................................................................... 11

*Coleman v. Hauck,*
    2012 WL 4480684 (N.D.N.Y. Sept. 26, 2012) ........................................................ 11

*Conte v. Cnty. of Nassau,*
    2010 WL 3924677 (E.D.N.Y. Sept. 30, 2010) .......................................................... 5

*Cugini v. City of New York,*
    941 F.3d 604 (2d Cir. 2019) ..................................................................................... 7

*Dean v. Blumenthal,*
    577 F.3d 60 (2d Cir. 2009) ..................................................................................... 13

*Deanda v. Hicks,*
  2015 WL 5730345 (S.D.N.Y. Sept. 30, 2015) ............................................................... 11

*Delgado v. City of New York,*
  2023 WL 6390134 (S.D.N.Y. Oct. 2, 2023) ................................................................. 11

*Dorsett v. Cnty. of Nassau,*
  732 F.3d 157 (2d Cir. 2013) .......................................................................................... 5

*Drimal v. Tai,*
  786 F.3d 219 (2d Cir. 2015) ........................................................................................ 12

*Ehrlich v. Town of Glastonbury,*
  348 F.3d 48 (2d Cir. 2003) .......................................................................................... 11

*Esmont v. City of New York,*
  371 F. Supp. 2d 202 (E.D.N.Y. 2005) ........................................................................... 7

*Farid v. Ellen,*
  593 F.3d 233 (2d Cir. 2010) .......................................................................................... 4

*Garcia v. Does,*
  779 F.3d 84 (2d Cir. 2015) .......................................................................................... 13

*Graham v. Connor,*
  490 U.S. 386 (1989) ...................................................................................................... 7

*Grullon v. City of New Haven,*
  720 F.3d 133 (2d Cir. 2013) .......................................................................................... 5

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) .................................................................................................... 12

*Jimenez v. Cnty. of Suffolk,*
  2025 WL 948348 (E.D.N.Y. Mar. 28, 2025) ................................................................. 4

*Ketcham v. City of Mount Vernon,*
  992 F.3d 144 (2d Cir. 2021) .......................................................................................... 7

*Livingston v. Hoffnagle,*
  2019 WL 7500501 (N.D.N.Y. Nov. 8, 2019) ................................................................ 7

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985) .................................................................................................... 12

*Munafo v. Metro. Transp. Auth.*,
   285 F.3d 201 (2d Cir. 2002) .......................................................................................... 13

*Nieves v. Bartlett*,
   587 U.S. 391 (2019) ........................................................................................................ 5

*Parkinson v. Town of Niskayuna*,
   2023 WL 8574309 (N.D.N.Y. Dec. 11, 2023) ............................................................. 11

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ...................................................................................................... 12

*Raspardo v. Carlone*,
   770 F.3d 97 (2d Cir. 2014) ............................................................................................ 4

*Staton v. Lamont*,
   2022 WL 17251863 (D. Conn. Nov. 28, 2022) ............................................................. 9

*Tangreti v. Bachmann*,
   983 F.3d 609 (2d Cir. 2020) .......................................................................................... 4

*Thomas v. Venditto*,
   925 F. Supp. 2d 352 (E.D.N.Y. 2013) ............................................................................ 5

*Tianbo Huang v. iTV Media, Inc.*,
   79 F. Supp. 3d 458 (E.D.N.Y. 2015) ............................................................................ 11

*Tolan v. Cotton*,
   134 S. Ct. 1861 (2014) .................................................................................................. 13

*Weyant v. Okst*,
   101 F.3d 845 (2d Cir. 1996) ......................................................................................... 10

*Wood v. Moss*,
   572 U.S. 744 (2014) ...................................................................................................... 12

Rules

Fed. R. Civ. P. 12(f) .............................................................................................................. 11

## PRELIMINARY STATEMENT

This purported class action arises from Plaintiffs' trespassing arrests for refusing lawful orders to disperse from the SUNY New Paltz ("SUNY") campus after failing to comply with school guidelines for maintaining orderly protests. Plaintiffs assert claims against officers from several law enforcement agencies, including Sheriff Juan Figueroa and "Deputy Sheriff Harder," alleging excessive force, false arrest, and violations of the First Amendment. Plaintiffs' conclusory allegations, however, fail to plausibly allege the direct personal involvement of Sheriff Figueroa and "Harder" in any perceived constitutional violation. Accordingly, this Court should dismiss Sheriff Figueroa and "Deputy Sheriff Harder" from this action.

## STATEMENT OF FACTS

Plaintiffs are comprised of students and graduates of SUNY and surrounding community members. (Ex. A ¶¶ 1-7.) On May 2, 2024, Plaintiffs were present on SUNY campus during a "peaceful protest" concerning "the atrocities committed by the Israeli government with the active military support of the United States." (Id. pp. 1-2, ¶¶ 15, 32.)

SUNY President Wheeler announced SUNY's decision to deploy police to remove the protest encampment. (Id. ¶ 46.) Various law enforcement agencies responded to campus and established a command center, including SUNY University Police, New York State Police, New Paltz Police Department, and Ulster County Sheriff's Office ("Sheriff's Office"). (Id. ¶ 52.) Around 10:30 p.m., after refusing three dispersal orders, police officers proceeded to remove protesters from the demonstration resulting in arrests for trespassing and/or disorderly conduct. (Id. ¶¶ 54-56, 60, 62-66, 94.) The Ulster County District Attorney ultimately dismissed all charges against all plaintiffs. (Id. ¶ 96.)

The amended complaint does not allege all Plaintiffs participated in the protest. (Id. ¶¶ 1-7 (alleging only Baptist and Pearce engaged in the protest).) Specifically, the complaint does not allege Plaintiff Riddell was a SUNY student, organized/set up the protest, or participated in the protest. (Id. ¶¶ 7, 19.) She was merely present. (Id. ¶ 39.)

Defendant Sheriff Juan Figueroa is the Ulster County Sheriff. (Id. ¶ 9.) The complaint alleges only the following as to Sheriff Figueroa: he is the Sheriff and "ordered members of the [Sheriff's Office] to unlawfully disperse and arrest lawful protesters," (id. ¶ 9), on May 5, 2024, he issued a public statement defending the actions of the Sheriff's Office, (id. ¶¶ 38, 51), he "supported this unlawful use of his members to stifle plaintiffs' exercise of their rights of assembly and free speech," (id. ¶ 57), and he (with others) violated Plaintiffs' First and Fourth Amendment rights by seizing/arresting without probable cause and using excessive force against Plaintiffs or ordering such conduct, (id. ¶¶ 112-15).

Plaintiffs allege "Deputy Sheriff Harder" was a member of the Sheriff's Office.[1] (Id. ¶ 11.) The complaint alleges only the following against "Deputy Sheriff Harder": he was a member of the Sheriff's Office and "directly participated in the unlawful conduct," (id. ¶ 11), he was with other unidentified officers who handcuffed Riddell "in the front" (rather than behind her back) and "was identified as the arresting officer," (id. ¶ 66(g)), and he (with others) violated Plaintiffs' First and Fourth Amendment rights by seizing/arresting without probable cause and using excessive force against Plaintiffs or ordering such conduct, (id. ¶¶ 112-15). Plaintiffs generally allege unidentified members of the Sheriff's Office (with other law enforcement agencies) responded to the scene and participated in the removal of protesters. (Id. ¶¶ 52-53, 59-60, 68(a), 69.)

---

[1] There is no Deputy Harder employed by the Sheriff's Office, but there is an Officer Harder employed by the State Police who, upon information and belief, was present during the subject events. Sgt. James Harcher is employed by the Sheriff's Office.

## STANDARD OF REVIEW

The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Mere "labels and conclusions" or "naked assertion[s]" devoid of "further factual enhancement" do not suffice. Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, fail to state a claim. Id. (citing Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). Thus, the complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. To meet this standard, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible." Id. at 570. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "But where the well-pleaded facts do not permit

the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id.

**ARGUMENT**

**POINT I**

**PLAINTIFFS FAILED TO ALLEGE PERSONAL INVOLVEMENT OF SHERIFF FIGUEROA AND SGT. HARCHER**

The Court should dismiss Sheriff Figueroa and Sgt. Harcher from this action because the complaint fails to sufficiently allege their personal involvement in any alleged constitutional violation. The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004); Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010). Thus, to state a claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Iqbal, 556 U.S. at 676); see also Raspardo v. Carlone, 770 F.3d 97, 115 (2d Cir. 2014) ("If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against the defendant.") (emphasis in original); Jimenez v. Cnty. of Suffolk, 2025 WL 948348, at *5 (E.D.N.Y. Mar. 28, 2025).

Moreover, the Second Circuit has held "there is no special rule for supervisory liability," and a plaintiff must still satisfy the same requirements of personal involvement to state § 1983 claims against a defendant in a supervisory role. Jimenez, 2025 WL 948348, at *5 (quoting Tangreti, 983 F.3d at 618 ("The violation must be established against the supervisory official directly.")). As the factors necessary to establish a § 1983 violation vary based on the

4

constitutional provision at issue, courts consider an individual defendant's alleged personal involvement in each constitutional violation separately. Id. (quoting Tangreti, 983 F.3d at 618.)

"[M]ere bald assertions and conclusions of law do not suffice" to allege personal involvement. Conte v. Cnty. of Nassau, 2010 WL 3924677, *11 (E.D.N.Y. Sept. 30, 2010) (Bianco, J.). Thus, "[p]leadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim" under § 1983 as such "group pleading" does "not give defendants fair notice of the claims against them." Jimenez, 2025 WL 948348, at *5, 8; Grullon v. City of New Haven, 720 F.3d 133, 138-39 (2d Cir. 2013); Atuahene v. City of Hartford, 10 F. App'x, 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [Rule 8's] minimum standard."); Thomas v. Venditto, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) ("[I]t is insufficient for the plaintiffs to rely on group pleading against these defendants without making specific factual allegations against them."); Automated Transaction LLC v. N.Y. Cmty. Bank, 2013 WL 992423, at *4 (E.D.N.Y. Mar. 13, 2013) ("Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it.").

### A. PLAINTIFFS FAILED TO STATE PLAUSIBLE FIRST AMENDMENT CLAIMS AGAINST SHERIFF FIGUEROA AND SGT. HARCHER

The complaint does not state a plausible First Amendment claim against either Sheriff Figueroa or Sgt. Harcher. To allege a plausible First Amendment claim based on a retaliatory arrest, Plaintiffs must allege an interest protected by the First Amendment; each defendants' actions were motivated or substantially caused by his exercise of that right; and each defendants' actions caused injury to Plaintiffs. Dorsett v. Cnty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013). Plaintiffs must also plead and prove the absence of probable cause. Nieves v. Bartlett, 587 U.S. 391, 405 (2019).

5

Plaintiffs do not allege Sheriff Figueroa personally participated in any arrest or took any retaliatory action against any Plaintiff or purported class member. Nor do Plaintiffs allege facts plausibly suggesting Sheriff Figueroa's actions were motivated by Plaintiffs' exercise of any First Amendment rights, or that Sheriff Figueroa caused injury to any plaintiff. Rather, Plaintiffs conclusorily allege only that Sheriff Figueroa "ordered" and "supported" the "unlawful" dispersing and arrest of "lawful protesters," and he issued a public statement defending such actions. (Id. ¶¶ 9, 38, 57.) Such allegations fail to plausibly allege Sheriff Figueroa's personal involvement as Plaintiffs must allege he "violated the [First] Amendment by [Figueroa's] own conduct, not by reason of [Figueroa's] supervision of others who committed the [alleged] violation." Tangreti, 983 F.3d at 619.

Similarly, as to Sgt. Harcher, Plaintiffs vaguely allege only that he "directly participated in the unlawful conduct," was present for handcuffing Riddell and was "identified" as her arresting officer, and (with others) "violated plaintiffs' First Amendment rights to freedom of speech, assembly, and protest." (Ex. A ¶¶ 11, 66(g), 112.) Plaintiffs do not allege Sgt. Harcher interacted with any other individual, and they failed to allege Riddell was actually engaged in any First Amendment-protected activity, an absence of probable cause to arrest for trespassing (the complaint does not allege she was a student or employee entitled to be on campus after 10:00 p.m.), or that Sgt. Harcher's actions were motivated by Plaintiffs' exercise of any First Amendment right. The Court should dismiss this conclusory claim against him. Jimenez, 2025 WL 948348, at *6 (finding "conclusory allegation does not plead [defendant] did anything specific to retaliate against the plaintiffs for exercising their First Amendment rights").

## B. PLAINTIFFS FAILED TO STATE PLAUSIBLE EXCESSIVE FORCE CLAIMS AGAINST SHERIFF FIGUEROA AND SGT. HARCHER

The complaint does not state plausible excessive force claims against Sheriff Figueroa or Sgt. Harcher. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). "Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out." Esmont v. City of New York, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005). Courts in the Second Circuit have held only overly tight handcuffs or unnecessary tightening constitutes excessive force. Ketcham v. City of Mount Vernon, 992 F.3d 144, 150 (2d Cir. 2021) ("unnecessary handcuff tightening . . . can constitute excessive force"); Burdick v. Oswego Cnty., 2014 WL 12781320, at *9 (N.D.N.Y. Mar. 31, 2014) ("handcuffs that are overly tight may constitute an excessive use of force").

With respect to handcuffing, "[t]he question is more broadly whether an officer reasonably should have known during handcuffing that his use of force was excessive. A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both." Cugini v. City of New York, 941 F.3d 604, 613 (2d Cir. 2019). "There is a consensus among District Courts in this Circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort and bruising." Burdick, 2014 WL 12781320, at *9. Indeed, "courts routinely dismiss claims of excessive force based on tight handcuffing where an [arrestee] asserts only a *de minimis* injury *without plausible allegations of wantonness or maliciousness*." Livingston v. Hoffnagle,

2019 WL 7500501, at *4 (N.D.N.Y. Nov. 8, 2019) (emphasis added), <u>report and recommendation adopted</u>, 2020 WL 95431 (N.D.N.Y. Jan. 8, 2020).

Again, the complaint does not allege Sheriff Figueroa used any force against any individual. Instead, Plaintiffs' claims attempt to impose "supervisory liability" based only on conclusory allegations that Sheriff Figueroa (with others) ordered/condoned the use of excessive force by other unspecified officers. (Ex. A ¶ 114.) The Second Circuit, however, has outlawed the use of such conclusory allegations holding "there is no special rule for supervisory liability" and "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Tangreti</u>, 983 F.3d at 61. Plaintiffs failed to sufficiently meet this pleading burden as to Sheriff Figueroa.

Plaintiffs also failed to sufficiently allege Sgt. Harcher's personal involvement in the alleged use of excessive force. Plaintiffs allege only the following interaction with "Harder":

> As *officers*, including defendant Harder approached to arrest her, Michelle Riddell *beseeched them not to handcuff her behind the back* because her arm was broken. After ten minutes of sustained pleas to take care of her arm, the *officers*, including defendant Harder, *handcuffed her in the front* before leading her away . . . .

Ex. A ¶ 66(g) (emphasis added).)

This account fails to plausibly allege an unreasonable use of force by Sgt. Harcher. The complaint does not allege Riddell was peacefully participating in the protest or an absence of probable cause to arrest her for trespassing (as she does not claim she was a student or teacher permitted on campus after 10:00 p.m.). Plaintiffs do not allege the "officers" used any force against Riddell beyond handcuffing her "in the front" incident to her trespassing arrest, that the handcuffs were overly tight, that any officer unnecessarily tightened them or acted maliciously, or that Riddell complained of pain or suffered any injury. The complaint alleges no facts plausibly

8

suggesting the "officers" reasonably should have known handcuffing Riddell "in the front" was excessive or its unreasonableness was otherwise apparent under the circumstances. Rather, Plaintiffs' concession that the "officers" accommodated Riddell's pleas to handcuff her "in the front" in consideration of her broken arm demonstrates the reasonableness of the "officers" actions. Indeed, the caption of the complaint suggests Riddell does not assert an excessive force claim. (Ex. A ("MICHELLE RIDDELL, on her own and on behalf of a class of similarly situated individuals unlawfully arrested").) Plaintiffs do not allege "Harder's" involvement in any other use of force or interaction with any other arrestee. See Acevedo v. Ross, 2019 WL 343246, at *4 (E.D.N.Y. Jan. 28, 2019) (dismissing excessive force claim where "plaintiff does not make allegations showing that arresting officers used any significant force whatsoever" because "bare allegation that he was handcuffed is insufficient to constitute excessive force that is prohibited by the Fourth Amendment"); Staton v. Lamont, 2022 WL 17251863, at *6 (D. Conn. Nov. 28, 2022) ("Because Mr. Staton has not alleged that his placement in handcuffs was painful or protracted, he has not pled a plausible excessive force claim."); Burdick, 2014 WL 12781320, at *9 (granting motion to dismiss claim based on handcuffing).

Moreover, Plaintiffs' failure to distinguish between the direct personal involvement of "Harder" as opposed to other unidentified "officers" referenced in the allegation warrants dismissal against Sgt. Harcher. Jimenez, 2025 WL 948348, at *6 (dismissing individual where "remaining allegations that mention Harrison ['*Harrison and others* caused to be confiscated over $14,000'] are conclusory, non-substantive and do not plead anything specific that Harrison did to cause any alleged constitutional violation"), *7 ("The plaintiffs alleges that the Doe officers executed the search warrant 'with the direct personal involvement of Hogan [and] Sarlo.' The plaintiffs do not specify, however, how Sarlo or Hogan were personally involved. The closest they

9

come is to suggest that the search warrant was issued 'as a result' of the *'joint efforts' of Hogan among others*.") (emphasis added); Acevedo, 2019 WL 343246, at *4 (E.D.N.Y. Jan. 28, 2019) (finding failure to plausibly allege personal involvement where "plaintiff does not allege that any of the defendants used any physical force against him, other than to handcuff him").

### C. PLAINTIFFS FAILED TO STATE PLAUSIBLE FALSE ARREST/UNLAWFUL SEIZURE CLAIMS AGAINST SHERIFF FIGUEROA AND SGT. HARCHER

The complaint fails to state plausible false arrest claims against Sheriff Figueroa and Sgt. Harcher. To state a plausible claim, Plaintiffs must allege each individual defendant intentionally confined a plaintiff without consent or other justification. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Plaintiffs do not allege Sheriff Figueroa personally participated in the arrest of any plaintiff. Rather, as noted, Plaintiffs' claims against Sheriff Figueroa are based only on his support of actions by subordinate officers and conclusory allegations that he and others seized/arrested, or ordered such seizures/arrests, without probable cause. (Ex. A ¶¶ 9, 113, 115.) Such allegations are insufficient to demonstrate the personal involvement of a supervisory officer. Tangreti, 983 F.3d at 618 ("The violation must be established against the supervisory official directly."); Jimenez, 2025 WL 948348, at *7.

Plaintiffs' claims also fail against Sgt. Harcher. The complaint alleges only that "Harder" – with other unidentified "officers" – handcuffed Riddell, and that "Harder was identified as the arresting officer." (Ex. A ¶ 66(g).) The complaint, however, fails to distinguish between any actions taken by Sgt. Harcher versus the other unidentified "officers" referenced in the allegation. "Group pleading like this does not give the defendants fair notice of the claims against them." Jimenez, 2025 WL 948348, at *8. The complaint also fails to allege Riddell was peacefully participating in a protest or that there was no probable cause to arrest her for trespassing (the

complaint notes she was not a student or employee), and Plaintiffs do not allege Sgt. Harcher interacted with any other plaintiff. (Ex. A ¶¶ 7, 66(g).)

Moreover, Plaintiffs' claims for seizure of their persons and false arrest are duplicative. Specifically, Plaintiffs allege i) Defendants "violated plaintiffs' Fourth Amendment rights by seizing, or ordering them to be seized, without probable cause or arguable probable cause that any of them had engaged in criminal conduct," (Ex. A ¶ 113), and ii) Defendants "violated plaintiffs' constitutional rights by maliciously arresting them or ordering their arrest without probable cause," (id. ¶ 115). Claims that arise from an unreasonable seizure of Plaintiffs' persons, however, are redundant of claims for false arrest. Coleman v. Hauck, 2012 WL 4480684, at *7 (N.D.N.Y. Sept. 26, 2012); see also Parkinson v. Town of Niskayuna, 2023 WL 8574309, at *4 (N.D.N.Y. Dec. 11, 2023) ("To the extent Plaintiff premises his Fourth Amendment claim on the seizure of his person, such a claim is dismissed because it is tantamount to a claim for false arrest"); Byrd v. Town of DeWitt, 698 F. Supp. 3d 379, 398 (N.D.N.Y. 2023) (dismissing unreasonable seizure and false imprisonment claims as duplicative of false arrest); Delgado v. City of New York, 2023 WL 6390134, at *19 (S.D.N.Y. Oct. 2, 2023) ("Plaintiff's unreasonable search and seizure claims are redundant of his false arrest claims.").[2]

---

[2] Plaintiffs' allegations fail to meet the high threshold necessary to obtain an award of punitive damages against Sheriff Figueroa and Sgt. Harcher. Ehrlich v. Town of Glastonbury, 348 F.3d 48, 52 (2d Cir. 2003) (requiring "evil motive or intent" or "reckless or callous indifference"). The Court should, therefore, strike Plaintiffs' for punitive damages against them. See Deanda v. Hicks, 2015 WL 5730345, at *28 (S.D.N.Y. Sept. 30, 2015) (dismissing punitive damages); Tianbo Huang v. iTV Media, Inc., 79 F. Supp. 3d 458, 461 n.2 (E.D.N.Y. 2015); Fed. R. Civ. P. 12(f).

## POINT II

### SHERIFF FIGUEROA AND SGT. HARCHER ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE PLAINTIFFS FAILED TO ALLEGE THEIR PERSONAL INVOLVEMENT IN THE VIOLATION OF ANY CLEARLY ESTABLISHED RIGHT

The Court should grant qualified immunity to Sheriff Figueroa and Sgt. Harcher because Plaintiffs failed to plausibly allege their personal involvement in the violation of any clearly established constitutional right.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (citation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Id. at 741 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability . . . [and] is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original). "The Supreme Court has 'repeatedly stressed the importance of resolving immunity questions at the earliest possible stage [of the] litigation.'" Drimal v. Tai, 786 F.3d 219, 225 (2d Cir. 2015) (quoting Wood v. Moss, 572 U.S. 744, 755 n.4 (2014)). The Second Circuit has held that "qualified immunity *can* be established by the facts alleged in a complaint" and agreed that it "should be resolved when possible on a motion to dismiss before the commencement of discovery to avoid subjecting public officials to time consuming and

expensive discovery procedures." Garcia v. Does, 779 F.3d 84, 97 (2d Cir. 2015) (emphasis in original) (internal quotation marks and citations omitted) (citing Wood, 572 U.S. at 757; Mitchell, 472 U.S. at 526). "If the complaint does not allege a cognizable federal claim, the defendant is entitled to have his qualified-immunity motion granted promptly as a matter of law." Munafo v. Metro. Transp. Auth., 285 F.3d 201, 211 (2d Cir. 2002).

The first prong in the qualified immunity analysis asks whether plaintiff has alleged a plausible violation of constitutional rights; the second prong asks whether that right was clearly established. Tolan v. Cotton, 134 S. Ct. 1861, 1865-66 (2014). Courts have discretion to decide the order in which to engage these two prongs. Id. at 1866 (citing Pearson, 555 U.S. at 236). It is "often beneficial" to first analyze whether plaintiff has alleged a plausible violation "where the analysis of the facts under clearly established law make it apparent that the relevant facts do not make out a constitutional violation at all." Dean v. Blumenthal, 577 F.3d 60, 67 (2d Cir. 2009) (quoting Pearson, 555 U.S. at 236). As extensively discussed, Plaintiffs failed to plausibly allege constitutional violations by Sheriff Figueroa and Sgt. Harcher. Accordingly, they are entitled to qualified immunity and should be dismissed from this action.

## CONCLUSION

For all of the foregoing reasons, Defendants Sheriff Juan Figueroa and Sgt. James Harcher, s/h/a Deputy Sheriff Harder, respectfully request this Court grant their motion and dismiss them from this action with prejudice, together with such other and further relief as this Court deems just, equitable, and proper.

Dated: Carle Place, New York
April 4, 2025

SOKOLOFF STERN LLP
*Attorneys for Defendants Sheriff Figueroa and Sgt. Harcher*

By: Mark A. Radi
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 240544