UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
EZRA BAPTIST, JULIET PEARCE, MARGARET
LEWIS, JAMIE SANIN, CAROLYN LECHUSZA
AQUALLO, and CHELSEA VILLALBA, on their
own and on behalf of a class of similarly situated
individuals who suffered excessive force during their
unlawful arrests, and MICHELLE RIDDELL, on her
own and on behalf of a class of similarly situated
individuals unlawfully arrested,

                    Plaintiffs,

vs.

DARRELL P. WHEELER in his individual capacity,
SHERIFF JUAN FIGUEROA, in his individual
capacity, OLIVIA BACHOR and THOMAS
BRUSCA, as representatives of a defendant class of
New York State Police Officers who violated
plaintiffs' rights as set forth herein and who are sued
in their individual capacities, DEPUTY SHERIFF
HARDER, as a representative of a defendant class of
members of the Ulster County Sheriff's Office who
violated plaintiffs' rights as set forth herein and who
are sued in their individual capacities, PO J.
YUKOWEIC, Shield No. 16, as a representative of the
class of members of the New Paltz State University
Police who violated plaintiffs' rights as set forth herein
and are sued in their individual capacities,

                    Defendants.

------------------------------------------------------------------------x

Docket No. 24 Civ. 1478
(AMN)(TWD)

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

SUSSMAN & ASSOCIATES
Attorneys for Plaintiffs
Michael H. Sussman, Esq.
1 Railroad Avenue, Suite 3
P.O. Box 1005
Goshen, New York 10924
(845) 294-3991 [Tel.]
(845) 294-1623 [Fax]
sussman1@sussman.law

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT....................................................................................1

STATEMENT OF FACTS..............................................................................................2

    1. Background.................................................................................................2
    2. First Amendment Retaliation...............................................................3
    3. False Arrest and Excessive Use of Force/Failure to Intervene....................4
    4. Defendant Sheriff Figueroa's and Sgt. Harcher's Personal Involvement.............5
    5. Aftermath of May 2nd SUNY New Paltz Campus Protest......................6

STANDARD OF REVIEW..............................................................................................7

DEFENDANT SHERIFF FIGUEROA'S MAY 6, 2024, STATEMENT......................8

LEGAL ARGUMENT......................................................................................................9

  I. PLAINTIFFS SUFFICIENTLY ALLEGE SHERIFF FIGUEROA'S AND SGT. HARCHER'S PERSONAL INVOLVEMENT..............................................9
  II. PLAINTIFFS STATE PLAUSIBLE FIRST AMENDMENT RETALIATION CLAIMS AGAINST SHERIFF FIGUEROA AND SGT. HARCHER.................12
    A. Plaintiffs State Plausible Fourth Amendment False Arrest Claims Against Sheriff Figueroa and Sgt. Harcher..................................................14
    B. Plaintiffs State Plausible Fourth Amendment Excessive Force/Failure-to-Intervene Claims Against Sheriff Figueroa and Sgt. Harcher.........................18
  III. THIS COURT SHOULD NOT GRANT SHERIFF FIGUEROA AND SGT. HARCHER QUALIFIED IMMUNITY..............................................................21

CONCLUSION...............................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Adams v. City of N.Y.*,
No. 21-CV-3956 (RPK) (LB),
2023 U.S. Dist. LEXIS 57500 (E.D.N.Y. Mar. 31, 2023)....................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................7

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001).................................................................................................10

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
365 F.3d 107 (2d Cir. 2004).....................................................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................7

*Boehner v. City of Rochester*,
609 F. Supp. 3d 220 (W.D.N.Y. 2022)...............................................................................19, 20

*Bowman v. Pathfinder Sols., LLC*,
No. 21-CV-6366 CJS,
2023 U.S. Dist. LEXIS 102653 (W.D.N.Y. June 13, 2023)...........................................16, 17

*Bryant v. Monroe Cty.*,
No. 19-CV-6474 CJS,
2022 U.S. Dist. LEXIS 6392 (W.D.N.Y. Jan. 11, 2022).......................................................10

*Davis v. Kelly*,
160 F.3d 917 (2d Cir. 1998)........................................................................................13, 14, 22

*Degroat v. Buck*,
No. 3:22-CV-507 (LEK/ML),
2023 U.S. Dist. LEXIS 128735 (N.D.N.Y. July 26, 2023)...................................................18

*Durr v. Slator*,
558 F. Supp. 3d 1 (N.D.N.Y. 2021).......................................................................................16

*Edrei v. Maguire*,
892 F.3d 525 (2d Cir. 2018)...................................................................................................21

*Figuereo v. City of Saratoga Springs*,
No. 1:23-cv-00922 (AMN/PJE),

     2025 U.S. Dist. LEXIS 24088 (N.D.N.Y. Feb. 11, 2025).......................................12

*Folk v. City of Ny,*
    No. 801393/21E,
    2023 N.Y. Misc. LEXIS 16204 (Sup. Ct. Apr. 27, 2023)..............................11

*Goel v. Bunge, Ltd.,*
    820 F.3d 554 (2d Cir. 2016)...............................................................8

*Gonzalez v. Hirschman,*
    No. 1:15-cv-810-GHW,
    2017 U.S. Dist. LEXIS 13276 (S.D.N.Y. Jan. 31, 2017)............................15

*Graham v. Connor,*
    490 U.S. 386 (1989).......................................................................18

*Horn v. Stephenson,*
    11 F.4th 163 (2d Cir. 2021)...............................................................21

*In re N.Y.C. Policing During Summer 2020 Demonstrations,*
    548 F. Supp. 3d 383 (S.D.N.Y. 2021)................................................13

*Jeffreys v. Rossi,*
    275 F. Supp. 2d 463 (S.D.N.Y. 2003)................................................16

*Jimenez v. Cty. of Suffolk,*
    No. 23-CV-9476 (AMD) (RLM),
    2025 U.S. Dist. LEXIS 59026 (E.D.N.Y. Mar. 28, 2025)........................18

*LaPoint v. Vasiloff,*
    No. 5:15-cv-185 (MAD/ATB),
    2017 U.S. Dist. LEXIS 35083 (N.D.N.Y. Mar. 13, 2017).......................16

*Lynch v. City of N.Y.,*
    952 F.3d 67 (2d Cir. 2020)...............................................................7

*Marom v. City of N.Y.,*
    No. 15-cv-2017 (PKC),
    2016 U.S. Dist. LEXIS 28466 (S.D.N.Y. Mar. 7, 2016)..........................17

*McClean v. Cty. of Westchester,*
    No. 17-CV-4492 (CS),
    2018 U.S. Dist. LEXIS 204269 (S.D.N.Y. Dec. 3, 2018).......................11

*McKenna v. Nassau Cty. News NY,*
    No. 2:23-CV-4286 (ARR) (ST),

       2023 U.S. Dist. LEXIS 217120 (E.D.N.Y. Dec. 6, 2023).....................8

*McKenna v. Wright*,
       386 F.3d 432 (2d Cir. 2004)..............................................21

*Meyers v. City of N.Y.*,
       No. 1:14-cv-09142 (ALC),
       2019 U.S. Dist. LEXIS 53150 (S.D.N.Y. Mar. 28, 2019)..................15

*O'Brien v. City of Syracuse*,
       No. 5:22-cv-948 (MAD/TWD),
       2023 U.S. Dist. LEXIS 164918 (N.D.N.Y. Sep. 18, 2023)................10

*Oakley v. Dolan*,
       980 F.3d 279 (2d Cir. 2020)..............................................18

*Phillips v. City of Middletown*,
       No. 17-CV-5307 (CS),
       2018 U.S. Dist. LEXIS 163308 (S.D.N.Y. Sep. 24, 2018)............18, 19

*Pluma v. City of N.Y.*,
       686 F. App'x 66 (2d Cir. 2017)..........................................21

*Pourkavoos v. Town of Avon*,
       823 F. App'x 53 (2d Cir. 2020)......................................21, 22

*Sorokti v. City of Rochester*,
       No. 21-CV-6709-FPG,
       2022 U.S. Dist. LEXIS 116349 (W.D.N.Y. June 30, 2022)................11

*Tangreti v. Bachmann*,
       983 F.3d 609 (2d Cir. 2020)...............................................9

*Torres v. City of N.Y.*,
       No. 21-cv-10832 (LAK),
       2023 U.S. Dist. LEXIS 59390 (S.D.N.Y. Apr. 4, 2023)....................9

*Vincent v. Winski*,
       No. 14-CV-7744 (VSB),
       2018 U.S. Dist. LEXIS 47537 (S.D.N.Y. Mar. 22, 2018).................17

*White v. Cty. of Dutchess*,
       No. 15 CV 8744 (VB),
       2016 U.S. Dist. LEXIS 112431 (S.D.N.Y. Aug. 23, 2016)...............17

**Statutes**

42 U.S.C § 1983.................................................................................................9, 12, 14, 19

**Rules**

Fed. R. Civ. P. 8(a)(2)..................................................................................................7

Fed. R. Civ. P. 12(b)(6).................................................................................................7

Fed. R. Evid. 201(b)(2) ................................................................................................8

**PRELIMINARY STATEMENT**

This case arises from a coordinated effort by the State University of New York at New Paltz ("SUNY New Paltz"), the New York State ("NYS") Police, Ulster County ("County") Sheriff's Office, the Town of New Paltz ("NP") Police Department, and SUNY New Paltz University ("University") Police Department to suppress Plaintiffs' peaceful demonstration at SUNY New Paltz on May 1-2, 2024.

SUNY New Paltz students and community members assembled peacefully in public space to protest the State of Israel's actions in Gaza and the United States' military support of those actions. Defendant law enforcement officials descended upon the nonviolent assembly with the intent of preventing Plaintiffs from continuing their demonstration, deployed riot tactics against those peacefully assembled, and falsely arrested over 130 demonstrators.

Plaintiffs assert claims under the First Amendment (retaliation) and Fourth Amendment (excessive force/failure to protect and false arrest) against all Defendants.

Defendants Juan Figueroa, Sheriff of the Ulster County Sheriff's Office (hereinafter "Sheriff Figueroa"), and "Sheriff Deputy Harder" (hereinafter "Sergeant James Harcher" or "Sgt. Harcher"), now move to dismiss, arguing that Plaintiffs have not sufficiently pleaded their personal involvement in any alleged constitutional violation and that they are entitled to qualified immunity.

Defendants' argument is premature and without merit, as Plaintiffs have sufficiently alleged both Sheriff Figueroa's and Sgt. Harcher's personal involvement in the coordinated law enforcement action. Specifically, through Sheriff Figueroa's participation in a joint command center, he approved, coordinated, and directed tactics employed by law enforcement, including his subordinates, that violently suppressed the peaceful demonstration and resulted in over 130 false arrests. Sgt. Harcher was among numerous members of the Sheriff's Office present at the

demonstration, who were directly involved in the ensuing law enforcement action or failed to intervene to prevent the violations of Plaintiffs' clearly established constitutional rights.

Plaintiffs respectfully request that this Court deny Defendants' motion and allow the parties to proceed to discovery.

## STATEMENT OF FACTS

### 1. Background

On May 1, 2024, SUNY New Paltz students erected an encampment on campus to protest the genocide in Gaza and demand University divestment from entities profiting from this violence. FAC ¶ 15. The encampment was located on Parker Quad ("the Quad"), an outdoor lawn that regularly serves as a public forum for campus events and activities. ¶ 18. New Paltz Students for Palestine, an unofficial student group, organized this nonviolent demonstration, which included educational activities such as teach-ins, talks, and group discussions. ¶ 16. Throughout the day, students and community members peacefully assembled at the encampment, including plaintiffs Ezra Baptist ("Baptist"), Jamie Sanin ("Sanin"), and Chelsea Villalba ("Villalba), in the presence of law enforcement officials from the NYS Police, NP Police Department, and University Police Department. ¶¶ 19-24. Later, Defendant Darrell P. Wheeler ("Wheeler"), SUNY New Paltz President, advised the students at the site that their tents violated University policy prohibiting temporary structures intended for overnight use. ¶¶ 25-30. The demonstrators maintained their peaceful presence at the encampment at night, as patrol vehicles circled the Quad.

The following day, on May 2, 2024, while the demonstrators resumed their peaceful activities, Kathleen Lieblich, Assistant Vice President ("AVP") for Student Wellbeing, and Michael Patterson, Assistant Vice President ("AVP") for Student Affairs, informed those assembled that the University would grant the students amnesty and discuss their demands if they removed their tents

by 7:00 p.m. ¶¶ 32-35. The demonstrators complied and, by about 6:30 pm, they dismantled the encampment. ¶ 37. By 7:00 p.m., approximately 200 people had gathered at the former encampment site, including plaintiffs Juliet Pearce ("Pearce"), Margaret Lewis ("Lewis"), Carolyn Lechusza Aquallo ("Lechusza Aquallo"), Michelle Riddell ("Riddell"), and Villalba. ¶¶ 39-40. At 7:15 p.m., AVP Lieblich and AVP Patterson returned, acknowledged that the students had removed their tents, and, without lawful justification, instructed them to disperse by 9:00 p.m. ¶¶ 41-42.

## 2. First Amendment Retaliation

For several hours, the demonstrators, including all plaintiff class representatives, sat in a "human chain," interlocking their arms and legs on the ground, while chanting protest songs. ¶¶ 43-44. At no time did the plaintiff class representatives or class members engage in violence, interrupt, intimidate, or threaten others, or interfere with the University's orderly operation. ¶ 45. However, in opposition to the "anti-genocide" message that plaintiffs promoted, at 10:20 p.m., Wheeler announced the University's decision to deploy police to "remove the encampment." ¶ 46. By then, the encampment had been dismantled; only plaintiff class members remained on site, where they engaged in peaceful protest on public grounds. ¶ 47.

By about 9:30 p.m., law enforcement, including the University Police, NYS Police, County Sheriff's Office, led by defendant Figueroa, and NP Police Department established a joint command center and directed its members to descend on campus. ¶ 52. Over 15 patrol vehicles from the NYS Police and County Sheriff's Office, accompanied by at least 30 officers on foot, advanced toward the Quad. ¶ 53. By about 10:03 p.m., an unidentified officer issued a dispersal order from a patrol vehicle, declared that the gathering was "unlawful" without lawful basis, and gave the demonstrators ten minutes to clear the area. ¶ 53. However, the order was barely audible over the demonstrators' chants and the noise of drones and helicopters circling overhead. ¶ 54.

Two additional dispersal warnings followed at 10:18 p.m. and 10:28 p.m. ¶ 55. By 10:30 p.m., officials from the NYS Police and County Sheriff's Office, under the command of defendant Figueroa, stormed the former encampment in riot gear, tearing down and trampling the demonstrators' banners which contained their "anti-genocide" messages. ¶ 56.

### 3. False Arrest and Excessive Use of Force/Failure to Intervene

Working in coordinated teams directed by a commanding officer, law enforcement defendants forcibly removed demonstrators from the "human chain," grabbed them by their arms, legs, or clothing, dragged them several feet behind the police line, even when they did not resist, searched their persons, and handcuffed them. *See generally* ¶¶ 62-66. Some of the protestors were manhandled and subject to plainly excessive force, to wit: officers seized Baptist by his arms and threw him headfirst into a pallet, causing a deep scalp laceration without providing immediate medical assistance, ¶ 66a; an officer inappropriately touched Villalba's breast during removal, ¶ 66b; four officers each grabbed one of Sanin's limbs, lifting her up, to forcibly remove her, ¶ 66c; two officers pulled Lechusza Aquallo from the circle before forcing her onto her stomach and searching her belongings and person, ¶ 66d; and officers removed both Pearce and Lewis, an elderly woman in her 80s, who required a cane for mobility, with similar force. ¶ 66e-f.

Unidentified officers employed other riot tactics, including the use of K-9 units and batons to prod, jab, push, and pry apart seated demonstrators, often targeting their chest areas. ¶ 68. At least one officer carried what appeared to be an airsoft rifle and pointed it downward at a student who was lying on their back on the ground just feet away. *Id.* Later, County Sheriff's Office members and other officers charged at demonstrators, grabbing them from behind, at times with such force that students' clothing was torn off. ¶¶ 69-71. Other officers forcibly pinned students to the ground to handcuff them. ¶ 72.

Throughout the ensuing chaos caused by this violent, coordinated law enforcement response, bystanders called for officers to stop hurting students and provide their badge numbers and identification, which they refused. ¶ 67.

By 11:47 p.m., law enforcement sealed off the Quad and restricted movement between residence halls, which remained under University lockdown. ¶ 73. Officers escorted arrestees, including plaintiff class representatives, to the Health and Wellness Center parking lot, where they were detained without access to restrooms or water and often in too-tight handcuffs before being transported to different barracks where they were further detained for several hours. *See generally* ¶ 74-89. Thereafter, bulldozers cleared the Quad, destroying plaintiffs' belongings and all remaining banners containing constitutionally protected speech. ¶ 92.

### 4. Defendant Sheriff Figueroa's and Sgt. Harcher's Personal Involvement

Defendant Sheriff Figueroa personally ordered his officers to unlawfully disperse and arrest lawful demonstrators through the joint command center, which approved, coordinated, and directed the assault on free speech on the SUNY New Paltz campus on May 2, 2024. ¶¶ 9, 52. Thereafter, on May 6, 2024, Sheriff Figueroa made false public statements about the basis for this police action. Specifically, he claimed that the demonstrators "expanded their encampment near Gage Hall, well beyond the permitted designated free speech zone and caused it to be an unlawful assembly." ¶ 38. This statement was demonstrably false, as by that time, the encampment had already been dismantled, and only Plaintiffs remained, engaged in peaceful protest in public space. ¶ 47.[1]

Defendant Sgt. Harcher, a member of the Ulster County Sheriff's Office, directly participated in the coordinated law enforcement response to the May 2nd campus protest. ¶ 11.

---

[1] That statement, referenced and relied upon in the Complaint, is attached as Exhibit 1 to the Sussman Affirmation in Opposition.

Sgt. Harcher participated in the unlawful removal of demonstrators who were exercising their First Amendment rights on the Quad, including Plaintiff Riddell. ¶ 66. He was personally involved in Riddell's arrest, assisted in handcuffing her without cause or basis, and was later identified as the arresting officer. *Id.* At the time of her arrest, Riddell, like other Plaintiffs, was lawfully present at SUNY New Paltz and clearly exercising her constitutional rights to free speech and assembly. *Id.*

5. **Aftermath of May 2nd SUNY New Paltz Campus Protest**

Law enforcement officials, including defendant Sgt. Harcher, arrested more than 130 demonstrators for trespassing and/or engaging in "disorderly conduct" while they were peacefully assembling on public space to express their views. ¶ 94. As a result, Plaintiffs were required to appear several times at the Town of New Paltz Justice Court, causing inconvenience and expense. ¶ 95. Eventually, the Ulster County District Attorney dismissed all charges against all plaintiff class members, noting that none of those charged engaged in violence and that their actions were motivated by a belief that all people deserve to live with dignity and respect. ¶ 96. Following the May 2nd arrests, Wheeler publicly acknowledged that he had ordered University police to remove the encampment, which had already been taken down, but did not intend for more than 170 members of law enforcement to respond as they did. ¶ 102.

Acting in concert from a deliberate, coordinated joint command center, law enforcement defendants violated plaintiffs' First Amendment rights to free speech and assembly. ¶¶ 52, 106. This suppression occurred despite clear prohibitions against content-based censorship established before May 2, 2024. ¶ 107. As a direct result of law enforcement officials' excessive force and failure to intervene, plaintiffs suffered physical and mental injury, anguish, pain, and distress. ¶¶ 108-109. The actions of each agency, including the County Sheriff's Office, were neither random nor arbitrary but followed a uniform, concerted policy representing a coordinated effort to violate

Plaintiffs' constitutional rights by suppressing their peaceful demonstration and punishing them for exercising these fundamental freedoms. ¶ 110.

## STANDARD OF REVIEW

A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a plaintiff must allege more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), "detailed factual allegations" are not required. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, to survive a Rule 12(b)(6) motion, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663. The court must accept as true all factual allegations and construe all reasonable inferences in the light most favorable to the plaintiff. *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020). "Rule 12(b)(6) does not countenance...dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 556. Moreover, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* Accordingly, if, as here, the complaint alleges "enough facts to state a claim to relief that is plausible on its face," *Ashcroft*, 556 U.S. at 697, the court must deny the motion.

## DEFENDANT SHERIFF FIGUEROA'S MAY 6, 2024, STATEMENT

Defendant Sheriff Figueroa claims no personal involvement in violating Plaintiffs' constitutional rights on May 1-2, 2024; however, his public statements immediately after the incident reveal his direct participation in approving, coordinating, and directing the joint tactics employed by law enforcement against the demonstrators and his attempt to fabricate post-hoc justifications for this response, which contradict what actually occurred. Plaintiffs respectfully request that this Court consider Sheriff Figueroa's statement addressing the protest incident, which he shared publicly via the Sheriff's Office Facebook page on May 6, 2024, and is attached hereto in full as Exhibit 1 to the Sussman Affirmation.

On a Rule 12(b)(6) motion to dismiss, a court "may review only a narrow universe of materials," which include "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference,...matters of which judicial notice may be taken," and "document[s] not expressly incorporated by reference in the complaint [that are] nonetheless 'integral' to the complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Here, Sheriff Figueroa's May 6, 2024, statement clearly satisfies this standard, as Plaintiffs have expressly incorporated it by reference, *see* FAC ¶ 38. Moreover, its authenticity is undisputed (it was written on the County Sheriff's Office letterhead, titled "Statement from the Sheriff," and distributed publicly via the County Sheriff's Office's Facebook page). Indeed, "[c]ourts may generally take judicial notice of facts that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned,' Fed. R. Evid. 201(b)(2), which include documents that have been made publicly available." *McKenna v. Nassau Cty. News NY*, No. 2:23-CV-4286 (ARR) (ST), 2023 U.S. Dist. LEXIS 217120, at \*14-15 (E.D.N.Y. Dec. 6, 2023). As such, this Court may consider Sheriff Figueroa's May 6, 2024, statement, which describes specific

law enforcement strategies that only someone with personal knowledge and involvement could articulate, and which mischaracterizes the preceding events to justify these tactical decisions.

**LEGAL ARGUMENT**

**POINT I:**
**PLAINTIFFS SUFFICIENTLY ALLEGE SHERIFF FIGUEROA'S AND SGT. HARCHER'S PERSONAL INVOLVEMENT**

To prevail on a §1983 claim, a plaintiff must establish: "(1) a 'violation of a right secured by the Constitution or laws of the United States' and (2) 'that the alleged deprivation was committed by a person acting under the color of state law.'" *Torres v. City of N.Y.*, No. 21-cv-10832 (LAK), 2023 U.S. Dist. LEXIS 59390, at *8 (S.D.N.Y. Apr. 4, 2023) (citation omitted). "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Plaintiffs address Sheriff Figueroa's and Sgt. Harcher's personal involvement in each constitutional violation separately.

It is undisputed that Defendants Sheriff Figueroa and Sgt. Harcher acted under color of state law when they responded to the May 2nd campus protest. "[I]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). The Second Circuit has clarified that there is no "special test for supervisory liability," and Plaintiffs must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti, supra*, 983 F.3d at 616 (2d Cir. 2020).

Defendants argue that Plaintiffs fail to sufficiently plead the County officials' personal involvement and instead rely on improper group pleading and supervisory authority regarding Sheriff Figueroa. This argument fails as both premature and meritless, since Plaintiffs pleaded specific, attributable, and direct conduct by both Sheriff Figueroa and Sgt. Harcher.

9

The pleading standard requires only that a complaint "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests," not that it be a "model of clarity or exhaustively present the facts alleged." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (quotation marks omitted). A complaint fails this standard when it "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct." *Id.* Here, by contrast, Sheriff Figueroa's and Sgt. Harcher's conduct is plainly distinguishable from the face of the Complaint. Sheriff Figueroa's May 6, 2024, statement revealed his personal involvement in operating an inter-agency "joint command center" that approved and directed the coordinated law enforcement response to the May 2nd protest, including the use of riot tactics. Sgt. Harcher was present at the protest and directly participated in the removal, arrest, and processing of protesters, including Riddell, whose constitutional rights to free speech and assembly were well-established and violated by him.

Moreover, courts recognize that "context matters" with respect to notice pleading, particularly in cases involving law enforcement. *O'Brien v. City of Syracuse*, No. 5:22-cv-948 (MAD/TWD), 2023 U.S. Dist. LEXIS 164918, at *24 (N.D.N.Y. Sep. 18, 2023). "[I]n situations involving an alleged assault by a group of police officers," as is the case here, "courts do not insist that the complaint set forth in detail the actions of each officer where it would be unreasonable to expect the plaintiff to be able to do so." *Bryant v. Monroe Cty.*, No. 19-CV-6474 CJS, 2022 U.S. Dist. LEXIS 6392, at *29 (W.D.N.Y. Jan. 11, 2022). Rather than lump all Defendants' conduct, Plaintiffs allege specific excessive force and failure to intervene, false arrest, and First Amendment claims regarding known (including Sgt. Harcher) and as-of-yet unknown law enforcement officials, including numerous unknown Sheriff's deputies.

Since officers from multiple jurisdictions were present at the protest, this Court should allow Plaintiffs to conduct discovery to determine the full extent of Sheriff Figueroa's and Sgt. Harcher's personal involvement, as well as to identify those Sheriff's deputies who were present, acting under Sheriff Figueroa's direction, and/or working with Sgt. Harcher to commit the alleged constitutional violations.

Indeed, courts in this Circuit have rejected similar group pleading arguments at the motion to dismiss stage. *See Folk v. City of N.Y.*, 243 F. Supp. 3d 363, 370 (E.D.N.Y. 2017) ("While Plaintiff must prove the roles the Individual Defendants played in her arrest to prevail on the merits, this Court will not dismiss her claims at [the motion to dismiss] stage solely because her narrative is imprecise as to each Individual Defendant's role in her arrest.") (citation omitted); *Sorokti v. City of Rochester*, No. 21-CV-6709-FPG, 2022 U.S. Dist. LEXIS 116349, at *14 (W.D.N.Y. June 30, 2022) (finding that Plaintiff did not "lump[] all Defendants' conduct together" when he pleaded that "unknown Sherriff's deputies assisted Trooper Nanry in arresting him" during a protest involving multiple law enforcement agencies); *McClean v. Cty. of Westchester*, No. 17-CV-4492 (CS), 2018 U.S. Dist. LEXIS 204269, at *16 (S.D.N.Y. Dec. 3, 2018) ("Whether a complaint should be dismissed based on impermissible group pleading hinges on whether adequate notice is given that will enable the adverse party to answer and prepare for trial...and identify the nature of the case.") (quotation marks omitted). The fact that Sheriff Figueroa and Sgt. Harcher identified each claim alleged against them in Plaintiffs' FAC and articulated the factual basis for these claims in their motion demonstrates that they received fair notice regarding the "nature of the case." That is, their successful distinction and attempted refutation of these claims defeat any assertion of impermissible "group pleading."

**PLAINTIFFS STATE PLAUSIBLE FIRST AMENDMENT RETALIATION
CLAIMS AGAINST SHERIFF FIGUEROA AND SGT. HARCHER**

To establish a § 1983 First Amendment retaliation claim, a plaintiff must plausibly allege that: "(1) he [or she] has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his [or her] exercise of that right; and (3) the defendant's actions caused him [or her] some injury." *Figuereo v. City of Saratoga Springs*, No. 1:23-cv-00922 (AMN/PJE), 2025 U.S. Dist. LEXIS 24088, at *49 (N.D.N.Y. Feb. 11, 2025) (citation omitted).

With respect to Sheriff Figueroa, Defendants conclusorily argue that he cannot be held liable under § 1983 because Plaintiffs did not plausibly allege his personal involvement in any actionable conduct. Contrary to Defendants' contention, Plaintiffs do not allege Sheriff Figueroa's involvement based solely on his supervisory authority; rather, Plaintiffs have sufficiently pleaded that Sheriff Figueroa was directly involved in approving, coordinating, and implementing strategies used against the demonstrators, which implicates his individual liability.

In Defendant's May 6, 2024, statement, he acknowledged, "at the request of the SUNY administration, a joint command center was established involving SUNY New Paltz University Police, New York State Police, Ulster County Sheriff's Office, and New Paltz Police Department to address the situation." It is well within the realm of plausibility to infer that Sheriff Figueroa, given his role, was present at and directly involved in this "joint command center," which orchestrated the ensuing constitutional violations. That is, by and through his own conduct, and acting with specific knowledge of the facts, Sheriff Figueroa was directly involved in the unlawful law enforcement action through his participation in the joint command center. His public statement detailing specific actions taken by Sheriff's deputies on May 2, 2024, as a direct result of joint

command decisions, clearly establishes his knowledge of and involvement in approving these tactics.

Indeed, courts have recognized personal involvement in alleged violations at the motion to dismiss stage when a senior official authorized and approved strategies that subordinates subsequently implemented. *See In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383 (S.D.N.Y. 2021) (finding former Mayor de Blasio's personal involvement because he allegedly acknowledged viewing videos of confrontations between police and protesters, had staff present at multiple protests, and personally approved NYPD's tactical approaches). By the same logic, this Court should find that Sheriff Figueroa was personally involved in the May 2, 2024, protest because he has publicly acknowledged his awareness of the Sheriff's Office's response, had numerous deputies present and involved in the alleged rights violations, and directly participated in approving such tactics at the joint command center. These tactics suppressed constitutionally protected speech and assembly rights and resulted in the false arrest of more than 130 peaceful demonstrators in a public space.

Regardless, as Plaintiffs allege that unknown Sheriff's deputies violated their First and Fourth Amendment rights, it would be premature for this Court to dismiss Sheriff Figueroa. Courts within this judicial circuit have long recognized "the appropriateness of maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability." *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998) (collecting cases). As the *Davis* court explained, "After an opportunity for discovery, undisputed allegations that the supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case, but such dismissal is premature where the opportunity to identify those involved has not yet been

accorded...in some instances, their identification might produce evidence from them that they acted at the supervisor's instruction, thus putting in issue the supervisor's denial of personal involvement." *Id.* at 921-22. Consequently, this Court should not dismiss Sheriff Figueroa and instead grant Plaintiffs the opportunity to identify the as-of-yet unknown subordinate officials through discovery, which will likely yield additional evidence showing Sheriff Figueroa's personal involvement beyond what Plaintiffs have already sufficiently pleaded.

Regarding Sgt. Harcher, Defendants incorrectly claim that Plaintiffs provided insufficient facts showing his personal involvement in the alleged First and Fourth Amendment violations. Equally unfounded is Defendants' argument that "Plaintiffs failed to allege Riddell was actually engaged in any First Amendment-protected activity" because "the complaint does not allege she was a student or employee entitled to be on campus after 10:00 p.m."[2] Plaintiffs adequately established that Riddell, like other plaintiff class members, was peacefully assembled in a public space expressing an anti-genocide message when Defendants, including Sgt. Harcher, removed and arrested her without justification and in opposition to her speech. Plaintiffs sufficiently pleaded that Defendant Harcher was present at and directly involved in handcuffing and unlawfully removing Riddell from the gathering on the false premise that she was trespassing on public university grounds. FAC ¶ 66g. These allegations are sufficient to survive a motion to dismiss.

## A. Plaintiffs State Plausible Fourth Amendment False Arrest Claims Against Sheriff Figueroa and Sgt. Harcher

To prevail on a § 1983 Fourth Amendment false arrest claim, a plaintiff must show that: "(1) a defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not

---

[2] Neither Riddell nor any other plaintiff ever received a charge which claimed that they were on the campus at a time beyond that set by any law or regulation.

otherwise privileged." *Adams v. City of N.Y.,* No. 21-CV-3956 (RPK) (LB), 2023 U.S. Dist. LEXIS 57500, at *11 (E.D.N.Y. Mar. 31, 2023) (quotation marks and citation omitted). "Probable cause is a complete defense to both First Amendment retaliation and Fourth Amendment false arrest and malicious prosecution claims." *Meyers v. City of N.Y.,* No. 1:14-cv-09142 (ALC), 2019 U.S. Dist. LEXIS 53150, at *13 (S.D.N.Y. Mar. 28, 2019). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has *committed or is committing* a crime." *Gonzalez v. Hirschman,* No. 1:15-cv-810-GHW, 2017 U.S. Dist. LEXIS 13276, at *14 (S.D.N.Y. Jan. 31, 2017) (citation omitted) (original emphasis).

Here, Defendants argue that Plaintiffs did not plausibly allege that Sheriff Figueroa "personally participated in the arrest of any plaintiff." As stated above, Sheriff Figueroa was directly involved in approving, coordinating, and directing the tactics deployed by as-of-yet unknown Sheriff's deputies, which implicates his personal involvement for the purposes of surviving a motion to dismiss, or at the very least, warrants denying his dismissal at this initial stage until Plaintiffs have the opportunity for discovery to identify the unknown subordinates. Indeed, as a direct result of the tactical decisions by Sheriff Figueroa as part of the joint command center, over 130 individuals were arrested without cause by law enforcement officials, including Sheriff's deputies.

Defendants also argue that Plaintiffs' Fourth Amendment false arrest claims against Sgt. Harcher fail for several reasons. They assert that the complaint does not differentiate between actions taken by Sgt. Harcher and those of other unidentified officers and fails to plausibly allege that Riddell was peacefully participating in a protest, that there was no probable cause for her

trespassing arrest, or that Sgt. Harcher interacted with any plaintiffs other than Riddell. Plaintiffs address each point in turn.

Plaintiffs pleaded that Sgt. Harcher acted in a group of officers who handcuffed, arrested, and expelled plaintiff Riddell from the peaceful demonstration without cause, which is sufficient to show Sgt. Harcher's personal involvement and state a plausible Fourth Amendment false arrest claim. It is well-settled that "a defendant's presence may be sufficient to establish personal involvement where the plaintiff is unaware of who actually engaged in the use of excessive force." *Durr v. Slator*, 558 F. Supp. 3d 1, 20 (N.D.N.Y. 2021); *see also Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) ("A plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene."). By the same logic, here, Plaintiffs need not specify Sgt. Harcher's precise role in Riddell's arrest.

Moreover, given that the arrest occurred during a crowded protest at night with multiple law enforcement agencies employing tactics such as flashlights and riot gear, it is understandable that Plaintiffs have not more specifically identified each officer's actions. *See LaPoint v. Vasiloff*, No. 5:15-cv-185 (MAD/ATB), 2017 U.S. Dist. LEXIS 35083, at *12-13 (N.D.N.Y. Mar. 13, 2017) ("Plaintiff's failure to identify each Defendants specific actions is further explained by the fact that Plaintiff contends that he was unable to see because "one officer was still shining his flashlight directly in my face causing me to be unable to see[.]"). Here, Plaintiffs have presented numerous facts demonstrating the chaotic, disorienting atmosphere that served as the backdrop of the alleged violations of their constitutional rights. Given these circumstances, this Court should not dismiss Plaintiffs' false arrest claim against Sgt. Harcher for inadequately pleading his involvement.

Regarding the question of probable cause, on a motion to dismiss, it is firmly established that "to show that the confinement was 'not otherwise privileged,' the plaintiff need only prove

that the confinement/arrest was warrantless." *Bowman v. Pathfinder Sols., LLC*, No. 21-CV-6366 CJS, 2023 U.S. Dist. LEXIS 102653, at *14 (W.D.N.Y. June 13, 2023); see also *White v. Cty. of Dutchess*, No. 15 CV 8744 (VB), 2016 U.S. Dist. LEXIS 112431, at *21 (S.D.N.Y. Aug. 23, 2016) ("Because probable cause is an affirmative defense when a plaintiff is arrested without a warrant, here, plaintiff's warrantless arrest is sufficient to meet the fourth element at the motion to dismiss stage."); *Vincent v. Winski*, No. 14-CV-7744 (VSB), 2018 U.S. Dist. LEXIS 47537, at *24 (S.D.N.Y. Mar. 22, 2018) ("Because of the presumption that a warrantless arrest is unlawful, plaintiffs are not required to allege a lack of probable cause when stating a false arrest claim based on such an arrest."); *Marom v. City of N.Y.*, No. 15-cv-2017 (PKC), 2016 U.S. Dist. LEXIS 28466, at *16 (S.D.N.Y. Mar. 7, 2016) (finding that "the requirement that plaintiffs 'show that...[their] confinement was not otherwise privileged' is satisfied simply by alleging that the arrest was made without a warrant").

Plaintiffs have satisfied their burden by alleging that law enforcement Defendants conducted unlawful arrests of more than 130 demonstrators, including Riddell, "without probable cause or arguable probable cause that any of them had engaged in criminal conduct." FAC ¶¶ 66, 94, 113. Therefore, dismissal based on Defendants' contention that Plaintiffs fail to allege an absence of probable cause would be wholly inappropriate.

Lastly, Defendants argue that Plaintiffs' Fourth Amendment false arrest claims against Sgt. Harcher should be dismissed because Plaintiffs do not allege Sgt. Harcher interacted with any other plaintiff [than Riddell]." This argument is fatuous, as Plaintiffs have sufficiently established that Sgt. Harcher was present at the demonstration and directly involved in Riddell's arrest. Moreover, given that law enforcement officials coordinated to arrest and remove peaceful demonstrators from campus, *see generally* FAC ¶¶ 62-72, it is entirely plausible that Sgt. Harcher either conducted

similar arrests or failed to intervene when witnessing constitutional violations. In any case, for the purposes of the current motion, Plaintiffs are not required to allege additional interactions between Sgt. Harcher and other plaintiffs.

## B. Plaintiffs State Plausible Fourth Amendment Excessive Force/Failure-to-Intervene Claims Against Sheriff Figueroa and Sgt. Harcher

It is firmly established that law enforcement may only use force that is objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Such claims "require[] consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *DeGroat v. Buck*, No. 3:22-CV-507 (LEK/ML), 2023 U.S. Dist. LEXIS 128735, at *14 (N.D.N.Y. July 26, 2023) (citation omitted). Consequently, "[d]etermining excessiveness requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quotation marks and citation omitted).

Indeed, our courts have cautioned that "[g]iven the fact-specific nature of the inquiry on an excessive force claim, such claims are often not amenable to early resolution." *Jimenez v. Cty. of Suffolk*, No. 23-CV-9476 (AMD) (RLM), 2025 U.S. Dist. LEXIS 59026, at *40 (E.D.N.Y. Mar. 28, 2025) (quotation marks and citation omitted). As the *Oakley* Court explained, "Because of its intensely factual nature, the question of whether the use of force was reasonable under the circumstances is generally best left for a jury to decide...[e]ven in the arrest context...These principles apply with even greater force at the motion to dismiss stage, where a court must assume the truth of the plaintiff's allegations and avoid resolving factual disputes." *Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020); *see also Phillips v. City of Middletown*, No. 17-CV-5307 (CS), 2018 U.S. Dist. LEXIS 163308, at *10 (S.D.N.Y. Sep. 24, 2018) ("When courts grant motions to dismiss

an excessive force claim, it is because the force used was objectively reasonable as a matter of law.") (citation omitted).

As Plaintiffs have already set forth their argument regarding Sheriff Figueroa's direct participation in tactical decision-making via a joint command center that resulted in the forcible removal of peaceful demonstrators on May 2, 2024, and took no action to prevent such harm, Plaintiffs will next address Sgt. Harcher's involvement. Specifically, Defendants contend that Plaintiffs fail to plausibly allege an unreasonable use of force by Sgt. Harcher on three grounds: (1) handcuffing plaintiff Riddell "in the front" does not constitute excessive force under the circumstances; (2) Plaintiffs do not allege Sgt. Harcher's involvement in any other use of force or interaction with any other arrestee; and (3) Plaintiffs do not distinguish between the personal involvement of Sgt. Harcher and other as-yet-unknown officers.

Plaintiffs alleged that Sgt. Harcher participated in handcuffing plaintiff Riddell, who had a broken arm at the time. Only after repeated requests for caution did Sgt. Harcher and other officers accommodate Riddell by handcuffing her in front rather than behind her back before removing her from the demonstration. Although Sgt. Harcher did not violently manhandle Riddell, the Fourth Amendment claims against him remain valid because he was present during the demonstration and failed to intervene to prevent the numerous instances of excessive force documented in the complaint, resulting in degrees of physical and mental injury.

Indeed, "[a]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Boehner v. City of Rochester*, 609 F. Supp. 3d 220, 230 (W.D.N.Y. 2022) (citation omitted). To prevail on a § 1983 failure-to-intervene claim, a plaintiff must show that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the

victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *Id.* at 231.

As set forth in the complaint, Defendant law enforcement officers advanced in a coordinated, tight formation, strategically creating temporary openings in their line. Through these openings, teams of two to five officers would surge forward to seize demonstrators by their arms, legs, or clothing, then drag these individuals several feet behind the police line before closing the gap and reforming their ranks. FAC ¶¶ 63-66. Other unidentified officers prodded, jabbed, and pushed seated demonstrators with batons, at times aiming blows at their upper chest. FAC ¶ 68. Another group gripped their batons with both hands in a downward position and repeatedly jabbed a student's arms and legs, nearly hitting their face. *Id.* One officer even carried what appeared to be an airsoft rifle and pointed it downward at a student who was lying on their back on the ground just feet away. Meanwhile, others grabbed a student, forced him face-down onto the ground, and pinned him there, kneeling around him and pressing their hands against his back as they zip-tied his wrists. FAC ¶ 72.

Put simply, the examples of excessive force are numerous. Given the nature of the protest, it is reasonable that Plaintiffs could not identify the specific officers involved in this conduct. However, Plaintiffs established that Sgt. Harcher was present at the protest, and thus it is reasonable to infer that he was also present for the specific confrontations between law enforcement officers and protesters summarized above. In light of the numerous as-yet unidentified officers, this Court should grant Plaintiffs the opportunity for discovery to identify these officers and maintain their excessive force/failure to intervene claims against Sgt. Harcher if it is later revealed that he directly engaged in or failed to intervene in the allegations set forth above.

## POINT III:
## THIS COURT SHOULD NOT GRANT SHERIFF FIGUEROA AND SGT. HARCHER
## QUALIFIED IMMUNITY

Officers are entitled to qualified immunity only when "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Pluma v. City of N.Y.*, 686 F. App'x 66, 67 (2d Cir. 2017) (citation omitted).

This judicial circuit "has admonished [d]efendants moving to dismiss a suit by reason of qualified immunity that they would in almost all cases be well advised to move for summary judgment, rather than for dismissal under Rule 12(b)(6) or 12(c)." *Pourkavoos v. Town of Avon*, 823 F. App'x 53, 59 (2d Cir. 2020) (quotation marks and citation omitted). "[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). That is, a defendant must show "not only that the facts supporting the defense appear on the face of the complaint, but also that it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Horn v. Stephenson*, 11 F.4th 163, 170 (2d Cir. 2021). This standard presents a "formidable hurdle," which Defendants have not overcome at present. *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) (quotation marks and citation omitted).

Defendants claim that Sheriff Figueroa and Sgt. Harcher are entitled to qualified immunity solely because "[P]laintiffs failed to plausibly allege their personal involvement in the violation of any clearly established constitutional right." This argument is both premature and unpersuasive. Plaintiffs' complaint plausibly alleges Sheriff Figueroa's personal involvement in approving, coordinating, and directing the joint tactics employed by law enforcement against demonstrators

who acted peacefully and lawfully while assembled on public property. Beyond being improper on its merits, qualified immunity for Sheriff Figueroa is inappropriate, as Plaintiffs are entitled to maintain supervisory officials as defendants until afforded an opportunity through at least brief discovery to identify subordinate officials who have personal liability. See *Davis*, 160 F.3d at 921.

Likewise, the complaint clearly establishes that defendant Harcher was present at and directly participated in the confrontation between law enforcement officials and peaceful demonstrators, including the removal and arrest of plaintiff Riddell without cause, giving rise to an inference of personal involvement. Furthermore, entitlement to qualified immunity as a defense to a claim of false arrest requires "arguable probable cause," *see Pourkavoos*, 823 F. App'x at 59, which Defendants have failed to establish or even address this standard in their argument.

Defendants have not met the "formidable" burden of proving entitlement to qualified immunity at this early stage of litigation. With numerous factual issues yet to be resolved through discovery, and Defendants' personal involvement plausibly and sufficiently pleaded, it is not beyond doubt that Plaintiffs "can prove no set of facts in support of their claim that would entitle them to relief" with respect to their First and Fourth Amendment claims against Sheriff Figueroa and Sgt. Harcher. Accordingly, Plaintiffs request this Court to reject Defendants' qualified immunity argument at this early stage of the litigation.

## CONCLUSION

For the above reasons, Plaintiffs respectfully request this Court to deny Defendant Sheriff Figueroa's and Sgt. Harcher's motion to dismiss and allow the parties to proceed to discovery.


Dated: Goshen, New York
      April 25, 2025

Respectfully submitted,

SUSSMAN & ASSOCIATES
Attorneys for Plaintiffs
Michael H. Sussman, Esq. [103324]
1 Railroad Avenue, Suite 3
P.O. Box 1005
Goshen, New York 10924
(845) 294-3991 [tel.]
(845) 294-1623 [fax]
sussman1@sussman.law