**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

EZRA BAPTIST, JULIET PEARCE, MARGARET
LEWIS, JAMIE SANIN, CAROLYN LECHUSZA
AQUALLO, and CHELSEA VILLALBA, on their
own and on behalf of a class of similarly situated
individuals who suffered excessive force during their
unlawful arrests, and MICHELLE RIDDELL, on her
own and on behalf of a class of similarly situated
individuals unlawfully arrested,

                          Plaintiffs,

    **v.**                                                                                          1:24-cv-1478 (AMN/TWD)

DARRELL P. WHEELER in his individual capacity,
SHERIFF JUAN FIGUEROA, in his individual
capacity, OLIVIA BACHOR and THOMAS
BRUSCA, as representatives of a defendant class of
New York State Police Officers who violated
plaintiff's rights as set forth herein and who are sued
in their individual capacities, DEPUTY SHERIFF
HARDER, as a representative of a defendant class of
members of the Ulster County Sheriff's Office who
violated plaintiff's rights as set forth herein and who
are sued in their individual capacities, PO J.
YUKOWEIC, Shield No. 16, as a representative of
the class of members of the New Paltz State
University Police who violated plaintiffs' rights as
set forth herein and are sued in their individual
capacities,

                          Defendants.
_____

**APPEARANCES:**                                                **OF COUNSEL:**

**SUSSMAN, WATKINS LAW FIRM**                  **MICHAEL H. SUSSMAN, ESQ.**
1 Railroad Avenue
P.O. Box 1005
Goshen, New York 10924
*Attorneys for Plaintiff*

**SOKOLOFF STERN LLP**                    **KIMBERLY H. LEE, ESQ.**
63 Washington Street
P.O. Box 509
Poughkeepsie, NY 12602

179 Westbury Avenue                       **MARK A. RADI, ESQ.**
Carle Place, NY 11514
*Attorneys for Defendants Sheriff Juan Figueroa*
*and Sgt. James Harcher, s/h/a Deputy Sheriff*
*Harder*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION & ORDER

## I.    INTRODUCTION

On December 5, 2024, Plaintiffs Ezra Baptist, Juliet Pearce, Margaret Lewis, Jamie Sanin, Carolyn Lechusza Aquallo, Chelsea Villalba, and Michelle Riddell (collectively, "Plaintiffs") commenced this action pursuant to 42 U.S.C. § 1983 on behalf of a putative class of individuals. Plaintiffs sue President Darrell P. Wheeler of the State University of New York at New Paltz ("SUNY New Paltz") and Ulster County Sheriff Juan P. Figueroa in their individual capacities, as well as New York State Police Officers Olivia Bachor and Thomas Brusca, "Deputy Sheriff Harder" of the Ulster County Sheriff's Office, and New Paltz State University Police Officer Po J. Yukoweic in their individual capacities and as representatives of putative defendant classes of officers. In their amended complaint ("Amended Complaint"), Plaintiffs allege that the defendants violated their constitutional rights through actions taken in response to a protest at SUNY New Paltz on May 2, 2024. *See generally* Dkt. No. 9.

Presently before the Court is a motion to dismiss brought by Defendants Sheriff Figueroa and Sgt. James Harcher (collectively "Defendants") for failure to state a claim on which relief can be granted (the "Motion").[1]  *See* Dkt. Nos. 29, 31, 33; Fed. R. Civ. P. 12(b)(6).

For the following reasons, the Court denies the Motion in part and grants it in part.

## II.     BACKGROUND

### A.  Overview

Plaintiffs allege that on May 2, 2024, they were peacefully protesting "the atrocities committed by the Israeli government with the active military support of the United States" at SUNY New Paltz. Dkt. No. 9 at 1-2.  Plaintiffs further allege that the defendants responded to the demonstration by using hostile, violent, and aggressive tactics with the intent of suppressing Plaintiffs' speech, thereby violating Plaintiffs' constitutional rights. *Id.*

### B.  The Parties

Plaintiffs are a group of SUNY New Paltz students and members of the local community. Plaintiff Ezra Baptist is an undergraduate student at SUNY New Paltz. *Id.* at ¶ 1.  Plaintiff Juliet Pearce is a recent graduate of SUNY New Paltz. *Id.* at ¶ 2.  Plaintiff Margaret Lewis is a resident of the town of New Paltz. *Id.* at ¶ 3.  Plaintiff Jamie Sanin is a graduate of SUNY New Paltz and a "community member." *Id.* at ¶ 4.  Plaintiff Carolyn Lechusza Aquallo is a musician and educator and a resident of Kingston, New York. *Id.* at ¶ 5.  Plaintiff Chelsea Villalba is a community social worker, a local human rights advocacy group member, and a resident of Kingston, New York. *Id.*

---

[1] Defendants assert that "[t]here is no Deputy Harder employed by the Sheriff's Office, but there is an Officer Harder employed by the State Police who, upon information and belief, was present during the subject events. Sgt. James Harcher is employed by the Sheriff's Office." Dkt. No. 29-3 at 7, n.1.  The Motion then seeks the dismissal of Harcher and Plaintiffs respond with respect to Harcher, not Harder.  Therefore, the Court for now assumes that Defendant "Deputy Sheriff Harder" refers to Sgt. James Harcher.

at ¶ 6.  Plaintiff Michelle Riddell is a special education teacher.  *Id.* at ¶ 7.  Plaintiffs Baptist, Pearce, Lewis, Sanin, Lechusza Aquallo, and Villalba bring this suit on behalf of a putative class comprising "similarly situated individuals who suffered excessive force during their unlawful arrests[.]"  Plaintiff Riddell brings suit on behalf of a putative class comprising "similarly situated individuals unlawfully arrested[.]"  *Id*. at 1.

At all relevant times, Defendant Juan Figueroa was the Sheriff of Ulster County, *id.* at ¶ 9, and Defendant James Harcher was a member of the Ulster County Sheriff's Office, *id.* at ¶ 11. Plaintiffs also allege that Defendant Harcher represents a class of "members of the Ulster County Sheriff's Office who violated [P]laintiffs' rights" on May 2, 2024.  *Id.* at ¶ 11.

### C.  Events of May 1-2, 2024

On May 1, 2024, SUNY New Paltz students and community members, including Plaintiffs (collectively, the "demonstrators"), erected a tent encampment on Parker Quad, an outdoor lawn on campus, "to protest the ongoing genocide in Gaza and demand SUNY New Paltz divest from entities profiting from this violence."  *Id.* at ¶¶ 15, 18, 19.  Plaintiffs allege that law enforcement officers, campus officials, and the New Paltz Village Deputy Mayor advised encampment members that tent camping was not permitted on SUNY New Paltz property, admonished students to remove their tents, and warned of "potential police action."  *Id*. at ¶¶ 21, 23, 27, 30, 34-36.

Plaintiffs allege that on May 2, 2024, encampment members had removed all tents by about 6:30 pm.  *Id.* at ¶¶ 20-37.  Plaintiffs further allege that "[a]t about 7:15 pm," University officials "returned, acknowledged that the students had removed their tents, and, without providing justification, instructed them to disperse by 9:00 pm."  *Id.* at ¶ 41.  Plaintiffs then contend that the demonstrators did not leave but "engaged in peaceful protest" by interlocking their arms and legs

on the ground in a circle in the middle of Parker Quad, "chanting protest songs and reviewing safety steps in case of police violence." *Id.* at ¶¶ 47, 43-44.

The Amended Complaint then states that around 9:30 pm, "more than 15 police vehicles from the New York State Police and Ulster County Sheriff's Office, accompanied by at least 30 officers on foot, advanced toward Parker Quad." *Id.* at ¶¶ 52-53. Plaintiffs allege that law enforcement directed this response from "a joint command center involving SUNY New Paltz University Police, New York State Police, Ulster County Sheriff's Office deputies and members of the New Paltz Police Department[]". *Id.* Around 10:03 pm, an unidentified officer issued a dispersal order via loudspeaker from one of the patrol vehicles, declared the demonstrators' gathering unlawful, and gave demonstrators ten minutes to vacate Parker Quad. *Id.* at ¶ 54. Plaintiffs allege that the order was "barely audible" because demonstrators were chanting and "surveillance drones and helicopters" were "circling overhead[.]" *Id.* Plaintiffs also allege that law enforcement issued two additional dispersal warnings at 10:18 and 10:28 pm. *Id.* at ¶ 55.

Plaintiffs allege that around 10:20 pm, law enforcement officers, including Ulster County Sheriff's Office members, "lined up outside Gage Hall" wearing riot gear and accompanied by K-9 units. *Id.* at ¶ 59. Subsequently, at about 10:30 pm, the officers "stormed the former encampment area, tearing down and trampling the demonstrators' banners, which contained constitutionally protected speech." *Id.* at ¶ 60. The officers "moved in a tight, coordinated formation" and "surrounded seated demonstrators, shined flashlights in their faces, and systematically removed them while they continued chanting." *Id.* at ¶¶ 62-63. Working with other law enforcement officers and "directed by a commanding officer," Ulster County Sheriff's Office members "would create openings in their line, through which teams of two to five [officers] would rush forward"

and "grab demonstrators by their arms, legs, or clothing," "drag them several feet behind the police line[,]" close the gap in the line and re-form ranks. *Id.* at ¶¶ 64-65.

Plaintiffs also allege specific instances in which officers removed or arrested demonstrators. Unidentified officers threw Plaintiff Baptist headfirst into a pallet, causing "a deep gash in his scalp that bled heavily[,]" and then dragged him across the ground by his arms and handcuffed him. *Id.* at ¶ 66a. Among other things, Plaintiffs allege that unidentified officers dragged Plaintiffs Baptist, Villalba, and Pearce by their limbs, inappropriately touched Plaintiffs Villalba and Lechusza Aquallo's breasts, forced Plaintiffs Villalba, Lechusza Aquallo, and Lewis onto their stomachs, and tightly handcuffed Plaintiffs Sanin and Lechusza Aquallo's wrists with zip-ties, causing them pain. *Id.* at ¶¶ 66a-f, 75-76. Plaintiffs allege that Plaintiff Baptist did not receive medical attention for more than an hour; after he was processed at the Highland Barracks, he received several staples to close his head wound. *Id.* at ¶¶ 66a, 87-88. Plaintiff Lewis, who was in her 80s and had been separated from her cane by unidentified officers, "collapsed and was transported by ambulance for emergency medical care." *Id.* at ¶¶ 66f, 84. In sum, Plaintiffs allege that 170 law enforcement members "arrested over 130 demonstrators . . . for trespassing and/or engaging in 'disorderly conduct' while they peacefully assembled to express their views on public property." *Id.* at ¶¶ 94, 102.

Plaintiffs allege that Defendant Figueroa "personally ordered . . . Ulster County Sheriff deputies to unlawfully disperse and arrest" Plaintiffs. *Id. at* ¶ 9. Plaintiffs also allege that Defendant Wheeler acted "in opposition to the 'anti-genocide' message that plaintiffs promoted," and that Defendant Figueroa "supported" Wheeler's use of law enforcement to "stifle plaintiffs' exercise of their rights of assembly and free speech." *Id.* at ¶¶ 46, 57.

## III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).   This presumption, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted).  Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

## IV.    DISCUSSION

Plaintiffs assert four causes of action against Defendants: First Amendment retaliation, Fourth Amendment excessive force, Fourth Amendment false arrest, and Fourth Amendment

unlawful seizure. *Id.* at ¶¶ 112-115. Defendants contend that Plaintiffs have not adequately pled that Defendant Figueroa or Defendant Harcher were personally involved in any of the alleged constitutional violations. Dkt. No. 29-3 at 11.

"[I]t is well settled that, in order to establish a defendant's individual liability in a suit brought under [42 U.S.C.] § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Morabito v. New York*, 803 Fed. App'x 463, 466 (2d Cir. 2023) (quoting *Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir. 2013)). "Pursuant to this requirement, a Section 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered." *Keyes v. Venettozzi*, No. 9:18-CV-0372 (GTS/DJS), 2022 WL 991402, at *6 (N.D.N.Y. Mar. 31, 2022) (quotation and internal quotation marks omitted). In other words, "the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained." *Durr v. Slator*, 558 F. Supp. 3d 1, 20 (N.D.N.Y 2021) (citations omitted).

While supervisory liability is not permitted under Section 1983, a defendant "need not actually 'pull the trigger,' or use force themselves, to be liable . . . as a direct participant." *Figuereo v. City of Saratoga Springs*, No. 1:23-cv-00922 (AMN/PJE), 2025 WL 460784, at *9 (N.D.N.Y Feb. 11, 2025). "A defendant who plans or directs an unreasonable use of force is liable for the resulting constitutional violation as a 'direct participant.'" *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014). "In this Circuit, a 'direct participant' includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Id.*; *see also Campbell v. City of Yonkers*, 19 CV 2117 (VB), 2023 WL 4867459, at *9 (S.D.N.Y. July 31, 2023).

The Court considers Defendants' contentions as to their lack of personal involvement with respect to each of Plaintiffs' claims.

### A.  First Amendment Retaliation Claims

"To plead a First Amendment retaliation claim a plaintiff must show that: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  As to the second element, because a defendant's motive and intent are difficult to plead with specificity, courts in this Circuit have found it "sufficient to allege facts from which a retaliatory intent . . . reasonably may be inferred." *Gagliard v. Village of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994); *see also Case v. City of New York*, 233 F. Supp. 3d 372, 390 (S.D.N.Y. 2017).  "With respect to the third element, the plaintiff[] [generally] must show that [his] First Amendment rights were 'actually chilled.'" *Searle v. Red Creek Cent. Sch. Dist.*, No. 22-2049-cv, 2023 WL 3398137, at *2 (2d Cir. May 12, 2023) (summary order) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).  But a plaintiff may instead show some other concrete, non-speech related harm.  *Dorsett*, 732 F.3d at 160.  Finally, when the alleged retaliation takes the form of an arrest, a plaintiff must also plead the absence of probable cause.  *Nieves v. Bartlett*, 587 U.S. 391 (2019).

### 1.  Defendant Figueroa

Defendants argue that Plaintiffs' allegations are conclusory, and that Plaintiffs fail to adequately allege that Defendant Figuroa personally violated any Plaintiff's constitutional rights. Dkt. No. 29-3 at 11.  Specifically, Defendants assert: "Plaintiffs do not allege that Sheriff Figueroa personally participated in any arrest or took any retaliatory action against any Plaintiff or purported class member.  Nor do Plaintiffs allege facts plausibly suggesting Sheriff Figueroa's actions were

motivated by Plaintiffs' exercise of any First Amendment rights, or that Sheriff Figueroa caused injury to any plaintiff." *Id.*

The Court finds Plaintiffs' allegations plausible. To sufficiently plead that Defendant Figueroa was personally involved in First Amendment retaliation, Plaintiffs must plausibly allege that his actions were "motivated or substantially caused" by Plaintiffs' exercise of their first Amendment rights and that his actions caused Plaintiffs some injury. *Dorsett*, 732 F.3d at 160. Here, Plaintiffs have done so by alleging that Defendant Figueroa personally ordered officers to disperse and arrest lawful demonstrators and did so to "stifle" their rights to free speech and assembly, resulting in the end of the demonstration as well as physical injuries to some demonstrators. *See* Dkt. No. 9 at ¶¶ 9, 46, 57, 66a, 90, 108; *see also Torreso*, 764 F.3d at 234. Therefore, the Court denies Defendants' motion to dismiss Plaintiffs' First Amendment claim against Defendant Figueroa.

### 2. Defendant Harcher

Plaintiffs' specific allegations against Defendant Harcher concern one arrest at the demonstration. After alleging that Defendant Harcher participated in the removal of demonstrators from the Quad, *see* Dkt. No. 9 at ¶ 11, Plaintiffs claim that Defendant Harcher was personally involved in the arrest of Plaintiff Riddell, *id.* at ¶ 66g. Specifically, Plaintiffs allege that Defendant Harcher was part of a group of officers who approached Plaintiff Riddell to arrest her. *Id.* at ¶ 66(g). After Plaintiff Riddell pled with them not to handcuff her behind the back because she had a broken arm, the officers, including Defendant Harcher, handcuffed her in the front and led her away. *Id.* "[T]hereafter defendant Harder [sic] was identified as the arresting officer." *Id*.

Defendants argue that Plaintiffs fail to allege a First Amendment claim against Defendant Harcher because they "do not allege Sgt. Harcher interacted with any other individual, and they

failed to allege Riddell was actually engaged in any First Amendment-protected activity, an absence of probable cause to arrest for trespassing (the complaint does not allege she was a student or employee entitled to be on campus after 10:00 p.m.), or that Sgt. Harcher's actions were motivated by Plaintiffs' exercise of any First Amendment right." Dkt. No. 29-3 at 11.

The Court finds Defendants' arguments unavailing. Viewed in the light most favorable to Plaintiffs, Plaintiffs have plausibly alleged that Plaintiff Riddell gathered with a group of peaceful and lawful demonstrators, *see* Dkt. No. 9 at ¶ 39, and her presence among that group is an activity protected by the First Amendment.[2] Plaintiffs have also plausibly alleged that Defendant Harcher arrested her without cause, and it is reasonable to infer that this arrest was motivated or substantially caused in part by the exercise of her First Amendment rights, i.e., her connection to and presence among the group of demonstrators. *See id.* at ¶¶ 7, 54, 66g. At this stage, these allegations are sufficient for Plaintiffs' claims to proceed.[3]

Thus, the Court denies Defendants' motion to dismiss Plaintiffs' First Amendment claim against Defendant Harcher.

---

[2] Defendants point out that the Amended Complaint specifically alleges that Plaintiffs Baptist and Pearce were "engaging in peaceful protest," but as to the other Plaintiffs it merely alleges that they were lawfully present. Dkt. No. 29-3 at 7; *see* Dkt. No. 9 at ¶¶ 1-7. Reading the Complaint in the light most favorable to Plaintiffs, the Court infers that Plaintiffs allege that those Plaintiffs not specifically described as engaging in protest, including Plaintiff Riddell, were at the very least part of the same First Amendment assembly as Plaintiffs Baptist and Pearce. *See, e.g., Marom v. City of New York*, 15-cv-2017 (PKC), 2016 WL 916424, at *10 (S.D.N.Y Mar. 7, 2016) (holding that "[i]t is plausible to conclude that an individual [who] chooses to physically associate with [a rally intended to convey a particularized message of political support] was engaging in expressive conduct protected by the First Amendment" even when that individual only alleged that she was present).

[3] As discussed further in Section C.2, Plaintiffs need not plead more to show a plausible lack of probable cause.

## B. Fourth Amendment Excessive Force Claims

When assessing whether force is unreasonable under the Fourth Amendment, a court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In doing so, a court takes the perspective of "a reasonable officer on the scene" rather than that of hindsight. *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 397).

The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "The police are not required to utilize the least amount of force possible to place someone into custody." *Brennan v. City of Middletown*, No. 18 Civ. 6148, 2020 WL 3820195, at *7 (S.D.N.Y. July 8, 2020). "Moreover, to support an excessive force claim, the plaintiff must establish that the defendant used more than *de minimis* force." *Durr*, 558 F. Supp. 3d at 16 (citing *Feliciano v. Thomann*, 747 Fed. App'x 885, 887 (2d Cir. 2019)). "Even conduct that caused some physical pain and resulted in side effects need not be compensated if a jury finds that such injuries were *de minimis.*" *Id.* (citing *Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004)). However, regardless of the amount of force, "a show of force by an officer that is overly disproportionate to the risk of harm may support a claim for excessive force." *Id.* (citing *Gersbacher v. City of New York*, No. 1:14-cv-7600, 2017 WL 4402538, *11 (S.D.N.Y. Oct. 2, 2017)).

In the arrest context, "unnecessary handcuff tightening . . . can constitute excessive force." *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 150 (2d Cir. 2021). This standard includes handcuffs that are "overly tight." *Burdick v. Oswego Cnty.*, 2014 WL 12781320, at *9 (N.D.N.Y. Mar. 31, 2014). A plaintiff asserting an excessive force claim, however, need not mechanically plead a certain level of handcuff tightness. *See Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019). Rather, a court asks "more broadly whether an officer reasonably should have known during handcuffing that his use of force was excessive. A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both." *Id.*

Excessive force claims are intensely fact specific and often not amenable to early resolution. *Jimenez v. Cnty. of Suffolk*, No. 23-CV-9476 (AMD) (RLM), 2025 WL 948348, at *15 (E.D.N.Y. Mar. 28, 2025). Indeed, "in the arrest context, the reasonableness of the force used is often a jury question." *Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020).

### 1. Defendant Figueroa

Plaintiffs plausibly allege instances in which multiple officers used excessive force. For example, Plaintiffs allege that "two unidentified male officers" threw Plaintiff Baptist "headfirst into a pallet stacked with water bottles and food supplies," "resulting in a deep gash in his scalp that bled heavily." Dkt. No. 9 at ¶ 66a. Plaintiffs also allege at least four specific instances in which unidentified officers handcuffed demonstrators too tightly, resulting in pain. *Id.* at ¶¶ 66c, 66d, 68b, 87. With respect to Defendant Figueroa, Plaintiffs allege that he personally ordered officers to disperse the protest and arrest lawful demonstrators. *Id.* at ¶ 9. As such, the Court finds

that Plaintiffs have sufficiently pled that Defendant Figueroa was personally involved in the deprivation of Plaintiffs' Fourth Amendment rights through the use of excessive force.

### 2.  Defendant Harcher

As the Court has noted, Plaintiff Riddell's arrest is the only specific incident in which Plaintiffs allege that Defendant Harcher was involved.   Defendants argue that Plaintiffs' allegations concerning Plaintiff Riddell's arrest fail to state a claim for excessive force.  Dkt. No. 29-3 at 13.  The Court agrees.  Plaintiffs' Amended Complaint describes Riddell's arrest in detail, but in contrast with other arrest allegations, Plaintiffs make no mention of officers using more than *de minimis* force, nor do they allege that officers handcuffed Riddell in a manner that was overly tight.  AC at ¶ 66g.  At no point do Plaintiffs allege that Riddell complained of pain while in handcuffs nor do they describe instances in which Defendant Harcher used any force, let alone excessive force.  *Id.*  In fact, Plaintiffs allege that Defendant Harcher and the other officers *accommodated* Plaintiff Riddell's request to be handcuffed in front because of her previously broken arm.  *Id.*  Indeed, Plaintiff Riddell, unlike the other Plaintiffs, does not bring an excessive force claim.  *See* Dkt. No. 9 at 1 (caption).

Plaintiffs fail to respond directly to Defendants' argument, seeking instead to restyle their claim against Defendant Harcher as a Fourth Amendment violation for failure to intervene in a use of excessive force.  Dkt. No. 31 at 25.  The Amended Complaint does not list failure to intervene as one of Plaintiffs' four causes of action, and the Court notes that Plaintiffs' one allegation that all moving and non-moving defendants failed to intervene is conclusory; it lacks sufficient factual detail concerning a failure to intervene in any particular use of excessive force or any individual's personal involvement.  *See* Dkt. No. 9 at ¶¶ 109, 111-15.

Because Plaintiffs have failed to adequately allege Defendant Harcher's use of excessive force, the Court dismisses this claim against Defendant Harcher. *See Acevedo v. Ross*, No. 18-CV-06140 (JMA) (AKT), 2019 WL 343246, at *4 (E.D.N.Y. Jan. 28, 2019) ("Plaintiff's bare allegation that he was handcuffed is insufficient to constitute excessive force that is prohibited by the Fourth Amendment.").[4]

## C. Fourth Amendment False Arrest Claims

To state a claim for false arrest under § 1983, a plaintiff must show that "(1) a defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Adams v. City of New York*, No. 21-CV03956, 2023 WL 2734611, at *4 (E.D.N.Y. Mar. 31, 2023) (citations omitted). A confinement is "privileged" if it is based on "probable cause." *See, e.g.*, *Simpson v. City of New York.*, 793 F.3d 259, 265 (2d Cir. 2015). "A police officer has probable cause to arrest when he has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 494 (N.D.N.Y. 2017) (internal quotations and citations omitted). "However, when an arrest is made without a judicial warrant, the existence of probable cause is an affirmative defense, for which defendants bear the burden of proof." *White v. Cnty. of Dutchess*, No. 15 CV 8744 (VB), 2016

---

[4] The Court notes that to the extent that Plaintiffs intended for Defendant Harcher to serve as a named representative for the defendant class of Ulster County Sheriff's Office members who allegedly engaged in excessive force, the dismissal of the claim of excessive force against him prevents him from serving in such a capacity. *See, e.g.*, *Mental Disability L. Clinic v. Hogan*, No. CV-06-6320 (CPS)(JO), 2008 WL 4104460, at *21 n. 32 (E.D.N.Y. Aug. 28, 2008) (declining, after dismissing defendant, to certify a defendant class because defendant could no longer serve as adequate class representative).

WL 4449720, at *7 (S.D.N.Y. Aug. 23, 2016) (citing *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010)).

### 1. Defendant Figueroa

Plaintiffs allege numerous instances that satisfy the first three elements of a false arrest claim. *See* Dkt No. 9 at ¶¶ 66a-g, 68b, 72. As to the fourth element, Plaintiffs allege that they were assembled lawfully and were not committing any crimes when officers arrested them and other members of the putative class. *See id.* at ¶¶ 45, 94, 115. Plaintiffs also argue that there were no laws or regulations that prohibited their activities at the time of the arrests, and that all arrests were made without probable cause. *Id.* at ¶ 115; Dkt. No. 31 at 20 n. 2.

The Court thus finds that Plaintiffs have sufficiently pled that Defendant Figueroa was personally involved in the deprivation of Plaintiffs' Fourth Amendment rights via false arrest. As above, Plaintiffs allege that he personally ordered officers to disperse the protest and arrest lawful demonstrators. Dkt. No. 9 at ¶ 9.

Thus, the Court denies Defendants' motion to dismiss Plaintiffs' claims for false arrest against Defendant Figueroa.

### 2. Defendant Harcher

Defendants raise two separate grounds on which the allegation of false arrest against Defendant Harcher should be dismissed. First, Defendants argue that Plaintiffs' false arrest allegations against Defendant Harcher rely on impermissible group pleading. Second, Defendants raise the affirmative defense of probable cause.

First, Defendants argue that Plaintiffs' account of Plaintiff Riddell's arrest engages in impermissible group pleading and therefore does not specifically allege that Defendant Harcher was personally involved in any act constituting false arrest. Dkt. No. 29-3 at 15. However,

Defendants misapply the prohibition on group pleading. In the Amended Complaint, Plaintiffs frequently attribute alleged violations to both individual officers and groups of unidentified officers, but such attributions are not impermissible group pleading. In cases involving alleged police misconduct, courts give particular attention to the factual context to determine whether the pleadings have met the requirements for adequate notice. *See Bryant v. Monroe Cnty.*, No. 19-CV-6474, 2022 WL 119184, at *11-12 (W.D.N.Y. Jan. 11, 2022) (collecting and applying cases). "In situations involving an alleged assault by a group of police officers or corrections officers, courts do not insist that the complaint set forth in detail the actions of each officer where it would be unreasonable to expect the plaintiff to be able to do so." *Id.* at *10.

This case is one such situation. Plaintiffs allege that about 170 officers from multiple jurisdictions were present at the protest. Dkt. No. 9 at ¶¶ 52, 102; Dkt. No. 31 at 11. When law enforcement dispersed the protest, Plaintiffs allege various incidents in which mostly unidentified officers "shined flashlights in their faces," "moved in a tight, coordinated formation," "jabbed" at demonstrators with batons, and chased and grabbed demonstrators from behind, among other actions. Dkt. No. 9 at ¶¶ 62, 63, 68, 71. Given these allegations of a chaotic scene, "[i]t would be asking too much for an arrestee to remember and plead the role each of several police officers played" in this alleged instance of false arrest. *Messina v. Mazzeo,* 854 F. Supp. 116 (E.D.N.Y. 1994).

The Court finds that even though Plaintiffs identify Defendant Harcher as one of a group of arresting officers, they sufficiently allege that he was "involved in the alleged constitutional deprivations, and how [he was] involved." *Little v. Soulia*, 9:19-CV-0263 (TJM/TWD), 2019 WL 13378467, at *10 (N.D.N.Y. Apr. 17, 2019). Specifically, Plaintiffs allege that Defendant Harcher violated their First and Fourth Amendment rights because he (1) participated in the dispersal of

lawful demonstrators; and (2) arrested Plaintiff Riddell without cause.  Dkt. No. 9 at ¶¶ 11, 66g; *see also* Dkt. No. 31 at 18.  Defendant Harcher has thus received fair notice of Plaintiffs' claims and the grounds on which they rest.  *See Atahuene v. City of Hartford*, 10 F. App'x 33, 34 (2d. Cir. 2001).

Second, as to probable cause, Defendants argue that "[t]he complaint fails to allege . . . that there was no probable cause to arrest [Riddell] for trespassing."  Dkt. No. 29 at 15.  However, at this stage, Plaintiffs do not need to preemptively refute all possible assertions of probable cause through their pleadings but need only plead facts sufficient to show a plausible lack of probable cause.[5]  In this Circuit, that standard is satisfied where a plaintiff, as here, alleges a warrantless arrest.  *Vincent*, 2018 WL 1441370, at *9 ("Because of the presumption that a warrantless arrest is unlawful, plaintiffs are not required to allege a lack of probable cause when stating a false arrest claim based on such an arrest." (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975))); *White*, 2016 WL4449720, at *7 ("Because probable cause is an affirmative defense when a plaintiff is arrested without a warrant, here, plaintiff's warrantless arrest is sufficient to meet the fourth element at the motion to dismiss stage.").

Accordingly, the Court finds that Plaintiffs have plausibly alleged that Defendant Harcher was personally involved in the false arrest of Plaintiff Riddell.  Plaintiffs allege that Defendant Harcher, along with other officers, intended to confine Plaintiff Riddell and that Plaintiff Riddell was conscious of the confinement.  Dkt. No. 9 at ¶ 66g.  Viewing the allegations in the light most

---

[5] At this stage, to successfully raise a probable cause defense, Defendants would need to show that the Amended Complaint alleges facts giving rise to probable cause or arguable probable cause as a matter of law.  Here, Defendants merely argue that Plaintiffs inadequately refute the possibility of probable cause.  *See, e.g.*, *Vincent v. Winski*, No. 14-CV-7744 (VSB), 2018 WL 1441370, at *9 (S.D.N.Y. Mar. 22, 2018) (holding that defendant's argument that probable cause existed to effectuate plaintiff's arrests failed on motion to dismiss because plaintiff's complaint did not allege facts demonstrating probable cause).

favorable to Plaintiffs, the Court infers that Plaintiff Riddell, despite negotiating to be handcuffed in front rather than behind her back, did not consent to the confinement. *See id.* Finally, Plaintiffs allege that all arrests described in the Amended Complaint were warrantless and made without probable cause—assumed true, Riddell's confinement was not privileged. *See* Dkt. No. 9 at ¶ 115.

The Court therefore denies Defendants' motion to dismiss Plaintiffs' claims for false arrest against Defendant Harcher.

### D. Fourth Amendment Seizure of Persons

Defendants argue that Plaintiffs' claims for false arrest and seizure of their persons under the Fourth Amendment are duplicative. Dkt. No. 29-3 at 16; *see* Dkt. No. 9 at ¶¶ 113, 115. Plaintiffs do not respond, and the Court agrees with Defendants. Thus, the Court dismisses Plaintiffs' claims against Defendants for the seizure of their persons as duplicative of their claims for false arrest because Plaintiffs premise both sets of claims on the same alleged facts. *See, e.g.*, *Parkinson v. Town of Niskayuna*, 2023 WL 8574309, at *4 (N.D.N.Y.) ("To the extent Plaintiff premises his Fourth Amendment claim on the seizure of his person, such a claim is dismissed because it is tantamount to a claim for false arrest.") (citing *Dixon v. City of Syracuse*, 493 F. Supp. 3d 30, 42 (N.D.N.Y. 2020) (dismissing a claim for unlawful seizure as duplicative of a claim for false arrest where no facts differentiate the claims)). For the same reason, the Court also *sua sponte* dismisses the seizure of persons claims as against all non-moving defendants. *See, e.g.*, *Jacquemyns v. Spartan Mullen Et Cie, S.A.*, No. 10 Civ. 1586 (CM)(FM), 2011 WL 348452, at *8 (S.D.N.Y. Feb. 1, 2011) (dismissing plaintiff's claim for relief against all defendants after dismissing it as against moving defendants, in part because it was duplicative).

### E.  Qualified Immunity

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).  "[I]f officers of reasonable competence could disagree on [whether the conduct is constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

A court applies "a two-step analysis to determine whether qualified immunity bars a plaintiff's claim against government officials for civil damages related to actions taken in the course of their official duties." *Sabir v. Williams*, 52 F.4th 810, 817 (2d Cir. 2022), *cert. dismissed,* 143 S. Ct. 2694 (2023) (citing *Francis v. Fiacco,* 942 F.3d 126, 139 (2d Cir. 2019)).  "Pursuant to that analysis, qualified immunity shields federal and state officials from money damages unless the plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (internal quotation marks omitted).  In assessing whether the right was clearly established, courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011).  The determining question is "whether the violative nature of *particular* conduct is clearly established," *id.* (emphasis added), and the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition[,]" *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (*per curiam*) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

Qualified immunity is an affirmative defense; therefore, Defendants bear the burden of proving that qualified immunity applies. *See Coolick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012). The defense of qualified immunity may properly be raised at the motion to dismiss stage because "[q]ualified immunity provides government officials 'immunity from suit rather than a mere defense to liability.'" *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (quoting *Pearson*, 555 U.S. at 231). At the motion to dismiss stage, the qualified immunity defense "'faces a formidable hurdle ... and is usually not successful'" because it is the defendant who must plead and prove the defense. *Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020) (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006)). Defendants "must therefore show not only that the facts supporting the defense appear on the face of the complaint, but also that it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Horn v. Stephenson*, 11 F.4th 163, 170 (2d Cir. 2021).

Defendants Figueroa and Harcher argue that they are entitled to qualified immunity because "Plaintiffs failed to plausibly allege their personal involvement in the violation of any clearly established constitutional right." Dkt. No. 29-3 at 17. The Court incorporates its previous determinations and finds it inappropriate to grant qualified immunity at this stage. On the face of the Amended Complaint, Plaintiffs plausibly allege that Defendants Figueroa and Harcher either ordered or participated in the dispersal of a lawful assembly, resulting in arrests without cause and the use of excessive force. Thus, Defendants have not met their burden—Plaintiffs may ultimately prove some set of facts in support of their claims that would entitle them to relief.

### F.  Punitive Damages

Defendants argue that Plaintiffs' allegations "fail to meet the high threshold necessary to obtain an award of punitive damages against Sheriff Figueroa and Sgt. Harcher." Dkt. No. 29-3

at 16 n. 2; *see* Dkt. No. 9 at 20 (prayer for relief).   Plaintiffs failed to dispute Defendants' argument to strike punitive damages, and Defendants now request that the Court deem that request abandoned.   Dkt. No. 33 at 8.   In its discretion, the Court finds that it is premature to preclude Plaintiffs from pursuing punitive damages against Defendants Figueroa and Harcher.   *See, e.g.*, *Lipton v. Cnty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (holding, in a case where plaintiff was counseled, that a court "may . . . deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed[,]" and that "[a]pplication of this proposition is . . . tempered by this Court's discretion"); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 448 (S.D.N.Y. 2011) (declining to dismiss punitive damages at the pleading stage because plaintiffs alleged conscious wrongdoing or callous indifference as to at least some of the individual defendants and had not yet had the benefit of any discovery) (citing *Frank Sloup Crabs Unlimited, LLC v. Loeffler,* 745 F. Supp. 2d 115, 147 (E.D.N.Y. 2011) (quotation marks omitted).

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' Motion to Dismiss Plaintiffs' First Amendment Retaliation claim, Fourth Amendment Excessive Force claim, and Fourth Amendment False Arrest claim against Defendant Juan P. Figueroa is **DENIED**; and the Court further

**ORDERS** that Defendants' Motion to Dismiss Plaintiffs' First Amendment Retaliation claim and Fourth Amendment False Arrest claim against Defendant James Harcher is **DENIED**; and the Court further

**ORDERS** that Plaintiffs' Fourth Amendment Excessive Force claim against Defendant James Harcher is **DISMISSED without prejudice**; and

**ORDERS** that Plaintiffs' Fourth Amendment Seizure claims against all defendants are **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>November 7, 2025</u>
     Albany, NY

Anne M. Nardacci
U.S. District Judge